543 So.2d 1126 (1989)
William C. McGEHEE
v.
Rebecca Walker McGEHEE.
Nos. CA 87 1861, CA 87 1862.
Court of Appeal of Louisiana, First Circuit.
May 16, 1989.
Clayton S. Knight, Franklinton, for plaintiff-appellee William C. McGehee.
Clint L. Pierson, Jr., Covington, for defendant-appellant Rebecca Walker McGehee.
Before LOTTINGER, CARTER, LANIER, LeBLANC and FOIL, JJ.
LANIER, Judge.
This is an action to partition community property. After a trial, the trial court rendered a judgment partitioning the community property which, among other things, allocated the community insurance agency to the husband and fixed a value for it of $225,000. The wife took this devolutive appeal asserting the community insurance agency should be valued at $413,673. The husband did not appeal or answer the appeal.

FACTS
Rebecca Walker McGehee and William C. McGehee were married in 1968. In 1983, they formed the Bill McGehee Insurance, Inc. corporation (Agency) and each received 150 shares of corporate stock. In 1985, the McGehees were legally separated on the grounds of mutual fault. Thereafter, Mr. McGehee filed this action to partition the community property. In 1986, the McGehees were divorced. In 1987, the partition action was tried and a judgment was rendered.
The primary evidence concerning the value of the Agency was the testimony of Joseph R. Black, Elvis E. Thomas and Samuel Smith. Black was qualified as an expert certified public accountant. He kept the Agency's accounts since its beginning. *1127 Based on the Agency's December 31, 1986 balance sheet, Black fixed the "book value" of the Agency at $13,560. He defined "book value" in an accounting sense as the difference between assets and liabilities. He also fixed the "liquidation value" of the Agency at $100,000 less than "book value." He admitted he had never given a fair market value for a going business and could not give a value for a noncompetition agreement.
Smith was qualified as an expert certified public accountant. He was apparently retained by Mrs. McGehee to determine a value for the Agency. Smith brought Thomas into the case because Thomas had expertise in evaluating insurance agencies. Smith worked with Thomas to evaluate the Agency. Smith testified that the "book value" of the Agency corporation was different from the value of the Agency's "book of business", and these two values should be added together to obtain the total value of the asset. He observed that the Agency's financial records indicated that Mr. McGehee received $80,000 in salary from the Agency in 1986. (Mr. McGehee testified he received a salary of $6,000 per month from the Agency.)
Thomas was qualified as an expert in insurance agency analysis and evaluation. He had extensive experience in this field. Thomas testified that the profitability of an insurance agency for tax purposes is a concept different from its sale value as a business. Often an insurance agency's "book of business" is sold, and the corporation which owned and sold the "book of business" is not part of the sale because the buyer does not want to acquire unknown liabilities in the seller's corporation. In such a situation, the seller will give the buyer a noncompetition agreement to protect the value of the "book of business" sold. If a noncompetition agreement was not given, the seller could sell the "book of business" and reopen around the corner and take the "book of business" away. However, in a divorce case, a noncompetition agreement is not that important if the spouse who is operating the business acquires its sole ownership (as does Mr. McGehee in the partition herein). A noncompetition agreement would be meaningful if Mrs. McGehee would give one to Mr. McGehee, or if Mr. McGehee would agree to give a noncompetition agreement to a third party purchaser of the "book of business" if Mr. McGehee decided to sell the "book of business" in the future. Thomas only knew of three or four agencies sold without noncompetition agreements.
Thomas testified that an insurance agency's "book of business" is evaluated by determining the amount of insurance commissions and applying a multiplier that ranged from 1.4 to 1.7. The amount of the multiplier to be used depended on various factors concerning the Agency. Thomas felt a multiplier of 1.5 was proper for the Agency herein. He examined the Agency's balance sheets and determined that the Agency received $275,782 in insurance commissions in 1985 and $240,859 in 1986. After applying the multiplier, Thomas determined the Agency's "book of business" was worth $413,673 at the end of 1985 and $361,298 at the end of 1986. These valuations were based on the assumption that the Agency would be sold with a noncompetition agreement, but no value was assigned to a noncompetition agreement.[1] Thomas was of the opinion that the 1985 evaluation was the most accurate because all financial data was available for that year and that was the year in which the parties separated, whereas, the 1986 evaluation was based on only ten months of financial data that had to be annualized.
The trial court fixed the "value" of the Agency at $225,000 with the following rationale:
Testimony regarding the insurance agency provided valuation estimates ranging from a negative book value of  $86,500.00, to a sales value between $361,298.00 and $413,000.00, if the business is sold at this time. This latter *1128 figure includes the consideration that Mr. McGehee would be required to sign a "non-competitive clause" to be in effect for a period of five (5) years, and which would in effect prevent Mr. McGehee from engaging in the general insurance business in this immediate area. The court finds that this is not a viable alternative, in that this involuntary "non-competitive clause" would violate Mr. McGehee's constitutional rights.
Mrs. McGehee argues that the valuation of the business should include an additional value for the "good will" of the business. Louisiana case law states that good will is not to be treated as a community asset, nor does it form a part of the corporate assets in the case of a sole practitioner such as an attorney or physician. Depner v. Depner, 478 So2d [sic] 108 (La.App. 4th Cir.1986). Although the Court recognizes the basis of this decision, it is also cognizant of the realization that an insurance agency operates in a different manner than professions such as attorneys or physicians. An insurance agency could maintain some degree of perpetual operation regardless of the presence of the insurance agent himself, whereas no ongoing good will exists absent the participation of a sole professional, such as an attorney or physician. The Court concluded that the agency is worth considerably more than the book value testified to by CPA Joe Black, but less than the value estimated by Mr. Thomas. Although the agency could operate without the efforts of Mr. McGehee, its value would be substantially diminished in the event Mr. McGehee became an active competitor of the agency. Since the Court will not order Mr. McGehee to execute a "no compete" agreement, the value of the business as determined by Thomas must be substantially reduced to take this into consideration. Accordingly, the Court finds the agency to have a value of $225,000.00.

VALUE OF THE AGENCY

(Assignments of Error Numbers 1 and 2)
Mrs. McGehee contends the trial court erred in fixing the value of the Agency "when it discounted the value of the corporation for purposes of community property partition when it took into consideration the effect of a `non-compete' clause" and by not accepting one of the valuations fixed by Thomas.
The evidence does not indicate any intention by Mr. McGehee to sell the Agency at anytime in the future. The evidence does not reflect that Mrs. McGehee had any intent to compete with the Agency in the past or in the future. In this factual posture, the observation by Thomas that a noncompetition agreement is not an important factor for purposes of partition in a divorce case is correct. The trial court judge fell into error when he considered the noncompetition agreement to be a significant factor and reduced the value of the Agency because Mr. McGehee could not legally be required to give one.[2] The trial court judge committed further error by substituting his own opinion for the "book of business" value of the Agency if no noncompetition clause were given. There is no evidence of record to support the $225,000 award for the "book of business" value. None of the experts assigned any value for a noncompetition clause. The opinion of the court cannot supersede the opinion of an expert in this factual posture. The court can only accept or reject the opinion of the expert.
When community property is partitioned, the court shall value its assets as of the time of trial. La.R.S. 9:2801; Queenan v. Queenan, 492 So.2d 902 (La. App. 3rd Cir.), writ denied, 496 So.2d 1045 (La.1986); Cheramie v. Bone, 444 So.2d 200 (La.App. 1st Cir.1983). Thus, the 1986 valuation of the "book of business" given by Thomas should be utilized instead of the 1985 evaluation. After carefully reviewing Thomas' testimony, we find his opinion well *1129 grounded from the standpoint of good reason and accept it. The value of the Agency's "book of business" is fixed at $361,298 for purposes of this partition.[3]
Because we are raising the partition value of the Agency from $225,000 to $361,298, the allocation of assets and liabilities in the judgment of partition will have to be altered. Accordingly, the judgment of partition is reversed, and this action is remanded to the trial court to accomplish this.

DECREE
For the foregoing reasons, the judgment of the trial court fixing the partition value of the Agency at $225,000 is amended to increase that value to $361,298, and the judgment of partition is reversed, and this action is remanded to the trial court for further proceedings in accordance with the views expressed herein. Mr. McGehee is cast for the cost of this appeal.
AMENDED IN PART AND REVERSED AND REMANDED.
CARTER, J., dissents.
NOTES
[1] In Citizens Bank & Trust Company v. West Bank Agency, Inc., 540 So.2d 440 (La.App. 1st Cir.1989), the parties stipulated a value of $12,500 for a noncompetition agreement in the sale of an insurance agency.
[2] We expressly do not rule on the validity of the trial court's holding that requiring an involuntary noncompetition agreement in the partition of community property is unconstitutional because that issue has not been raised in this appeal.
[3] Mrs. McGehee did not assign as error the ruling by the trial court which rejected Black's "book value" of the corporation of $13,560.