565 So.2d 978 (1990)
William H. COOPER, Jr., et al.,
v.
James Ralph OLINDE and Catherine Glynn Olinde.
No. 89 CA 0318.
Court of Appeal of Louisiana, First Circuit.
June 26, 1990.
Rehearing Denied August 9, 1990.
*979 Paul S. West, Baton Rouge, for William H. Cooper, Jr., Leon Stockwell, C. James Rogers.
Donald Beckner, Baton Rouge, for James Ralph Olinde, Catherine Glynn Olinde.
Paul Spaht, Baton Rouge, for Stephen Y. Landry.
Before WATKINS, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
This action for rescission, damages, and injunctive relief arises out of the sale of immovable property.

FACTS
Prior to November, 1984, James Ralph Olinde and Catherine Glynn Olinde (Ralph and Kacoo) owned Lots X and Y (which resulted from a resubdivision of Lot 10-B-1-B) of the Silverside Plantation in Baton Rouge, Louisiana. At that time, Phyllie's Chillie Restaurant was located on Lot X, and Lot Y was a vacant lot. The following diagram depicts the physical layout of the properties:

On November 23, 1983, Ralph and Kacoo entered into a real estate contract for the sale of Lot Y with Henry D. H. Olinde and John M. Clements. Under the terms of the contract, Olinde and Clements agreed to the following conditions:
Sellers [Ralph and Kacoo] will receive a right of passage for their Lot X (adjoining *980 tract of land) to Summa Drive thru [sic] the tract of land buyers [Clements] have bought or going to buy on Summa Drive, as shown on plat attached hereto.
Buyers agree that sellers or their assigns have parking privileges for their clients or customers of lot X on lot Y but that said privileges shall not begin until the normal close of working days, no later than 5:30 p.m., Baton Rouge, Louisiana, time then prevailing. Sellers or their assigns may park on tract Y or any other contingent or adjacent property owned by buyers, whether separated by a street or not, after 5:30 p.m., Baton Rouge, Louisiana time then prevailing; any time on normal working days or all day on holidays.
Buyer [sic] agree that sellers of tract X or their assigns may also have parking privileges on rear land owned or owned in the future by buyers:
Sellers or their assigns agree to maintain area used by their clients for parking and try to keep free of any litter on buyers [sic] property that originated from sellers or their assigned customers.
No fence shall be erected between lots X or Y or any adjacent or contingent property owned by buyers.
On May 3, 1984, Ralph and Kacoo sold Lot X to William H. Cooper, Jr., Anna Marie Van Norman Cooper, Leon Lafayette Stockwell, III, Maureen Hatch Stockwell, and Charles James Rogers. Contemporaneous with the act of sale, Ralph and Kacoo and Cooper, Stockwell, and Rogers executed a separate agreement, which provided as follows:
It is hereby understood and agreed
that James Ralph Olinde and Catherine Glynn Olinde own Lot Y of a Resubdivision of Silverside Plantation and have signed an agreement to sell Lot Y [to Clements].
It is further understood and agreed that in that purchase agreement they have retained and reserved for the benefit of Lot X certain servitudes and parking rights on Lot Y.
It is further understood and agreed that when the sale of Lot Y is completed, as further consideration for purchasers' acquiring Lot X, James Ralph Olinde and Catherine Glynn Olinde will transfer these rights to the purchasers of Lot X.
On July 31, 1984, by Act of Cash Sale, Ralph and Kacoo transferred Lot Y to Olinde and Clements as well as to their respective spouses, Dianne Kachmarik Olinde and Astrid Roy Clements. The act of sale, however, failed to reserve any of the aforementioned rights.[1] Thereafter, on November 8, 1984, Olinde and Clements and their spouses sold to Professional Centre[2] two tracts of land: Lot Y, which had previously been acquired from Ralph and Kacoo, and Lot 10-B-1-C-1, which was the division of Lot 10-B-1-C of Silverside Plantation. Olinde, Clements, and their spouses retained ownership of Lot 10-B-1-C-2. The foregoing diagram of the physical layout of the property in question shows the locations of these lots. Contemporaneous with the act of sale, Olinde, Clements, and their spouses executed a conventional predial servitude agreement in favor of Professional Centre along the western boundary of Lot 10-B-1-C-2, which is also depicted in the foregoing diagram.
Subsequent to acquisition of Phyllie's Chillie, Cooper, Stockwell, and Rogers successfully operated the restaurant, but then encountered difficulties which caused the business to close. On July 3, 1986, American Bank & Trust Company[3] filed a petition for foreclosure by executory process *981 on Lot X.[4] Pursuant thereto, Lot X was seized pursuant to a writ of seizure and sale.
On March 4, 1987, Cooper and Stockwell filed the instant suit for rescission, damages, and injunctive relief.[5] Named as defendants were: Charles James Rogers, who was made a defendant pursuant to LSA-C.C.P. art. 644;[6] Ralph and Kacoo, former owners of Lot X; and Capital Bank & Trust Company.[7] In their petition, Cooper and Stockwell alleged that Ralph and Kacoo had breached the May 3, 1984, agreement, agreeing to reserve for Lot X certain rights in the sale of Lot Y, and that Ralph and Kacoo were liable in damages for such failure. Ralph and Kacoo filed an answer and third party demand, denying any liability to Cooper, Stockwell, or Rogers and asserting a claim against Steven Y. Landry, who was Olinde and Clements' attorney in the sale of Lot Y, for breach of duty in preparation and execution of sale documents. The third party demand was subsequently severed from the main demand.
After trial on the main demand, the trial judge determined that although the May 3, 1984 agreement did not expressly state that the right of passage and parking privileges were predial servitudes, because these rights conferred an advantage to Lot X, they were presumed to be predial servitudes, citing LSA-C.C. art. 733. The trial judge found that there was no dispute as to Ralph & Kacoo's intent to convey these rights to the vendees. He then found that the value of the land purchased by Cooper and Stockwell was diminished by Ralph and Kacoo's failure to deliver the predial servitudes agreed upon in the May 3, 1984 agreement. In accordance with this determination, the trial judge found that Cooper and Stockwell were entitled to relief commensurate with the diminution in the value of the property, specifically $8,666.52 for the value of the parking rights and $44,886.00 for the value of the right of passage, plus interest of $16,065.60 for interest from date of sale to judgment, with legal interest from date of judgment until paid.
After trial on the third party demand, the trial judge determined that Landry owed a duty to Ralph and Kacoo to fully explain the legal ramifications of their failure to include the servitude rights in the sale agreement or to make certain Ralph and Kacoo contacted their attorney to represent them. In accordance with his determination, the trial judge found that Ralph and Kacoo were entitled to recover from Landry the amount awarded on the main demand, costs, and attorney's fees with interest from date of judicial demand.
On August 4, 1988, the trial judge rendered judgment as follows:
1) In favor of plaintiffs in the principal demand, William H. Cooper and Leon Lafayette Stockwell, III, and against the defendants, James Ralph Olinde and Catherine Glynn Olinde, in the amount of Forty Six Thousand, Four Hundred Twelve and 03/100 ($46,412.03) Dollars, together with legal interest thereon from October 28, 1987 until paid, and for all costs of those proceedings; and further
2) In favor of plaintiffs in the third party demand, James Ralph Olinde and Catherine Glynn Olinde, and against the third party defendant, Steven Y. Landry, for all damages sustained by James Ralph Olinde and Catherine Glynn Olinde resulting from the variations or omissions in the sale document, including the following:

*982 a) All amounts awarded to William H. Cooper, Jr. and Leon Lafayette Stockwell, III pursuant to the judgment on the principal demand herein, including the amount of Forty Six Thousand, Four Hundred Twelve and 03/100 ($46,412.03) Dollars, together with legal interest thereon from October 28, 1987 until paid, and for all costs of those proceedings;
b) All costs incurred by James Ralph Olinde and Catherine Glynn Olinde in connection with their defense of the principal demand in the amount of Six Thousand, Eight Hundred Seven and 21/100 ($6,807.21) Dollars as proven at trial of the third party demand; and
C) Attorneys fees incurred by James Ralph Olinde and Catherine Glynn Olinde in connection with their defense of the principal demand in the amount of Forty Seven Thousand and No/100 ($47,000.00) Dollars;
With interest on the amounts itemized in paragraphs (b) and (c) at the legal rate from date of judicial demand, and for all costs of the third party proceedings.
On August 15, 1988, Rogers requested a new trial on the grounds that his rights had not been adjudicated in the August 4, 1988 judgment. On the same date, Landry requested a new trial on the grounds that the judgment rendered against him was contrary to the law and the evidence. The trial judge granted Rogers' motion, but determined that Rogers was properly joined pursuant to LSA-C.C.P. art. 644, had ample notice of the proceedings, and had failed to assert his claim prior to entry of judgment. The court then determined that, as a result, Rogers was precluded from asserting a claim for his virile share of the damages. The trial judge, however, denied Landry's motion for new trial.
On October 3, 1988, the trial judge rendered an amended judgment, which provided as follows:
1) In favor of plaintiffs in the principal demand, William H. Cooper and Leon Lafayette Stockwell, III, and against the defendants, James Ralph Olinde and Catherine Glynn Olinde, in the amount of Forty Six Thousand, Four Hundred Twelve and 03/100 ($46,412.03) Dollars, together with legal interest thereon from October 28, 1987 until paid, and for all costs of those proceedings; and further
2) In favor of plaintiffs in the third party demand, James Ralph Olinde and Catherine Glynn Olinde, and against the third party defendant, Steven Y. Landry, for all the damages sustained by James Ralph Olinde and Catherine Glynn Olinde as a result of the variations and omissions in the sale documents prepared by Landry, including the following:
a) all amounts for which the Olindes are cast, including the amounts awarded to William H. Cooper, Jr. and Leon Lafayette Stockwell, III pursuant to the judgment on the principal demand herein, being the amount of Forty Six Thousand, Four Hundred Twelve and 03/100 ($46,412.03) Dollars, together with legal interest thereon from October 28, 1987 until paid, and for all costs of those proceedings;
b) all the costs incurred by James Ralph Olinde and Catherine Glynn Olinde in connection with their defense of the principal demand in the amount of Six Thousand, Eight Hundred Seven and 21/100 ($6,807.21) Dollars as proven at trial of the third party demand, against which will be credited the costs, if any, paid by Mr. Landry pursuant to paragraph 2(a) above; and
c) the attorneys fees incurred by James Ralph Olinde and Catherine Glynn Olinde in connection with their defense of the principal demand in the amount of Forty Seven Thousand and No/100 ($47,000.00) Dollars;
With interest on the amounts itemized in paragraphs (b) and (c) at the legal rate from May 19, 1987, the date of judicial demand, and for all costs of the third party proceedings; and further
3) Against Charles James Rogers, defendant, who, having been properly joined pursuant to Louisiana Code of Civil Procedure Article 644, nevertheless failed or neglected to assert his rights in this action and is thus precluded from *983 obtaining judgment in his favor for his one-third (1/3) share of the total damages of $69,618.12 found by the Court to have been sustained by plaintiffs, Cooper and Stockwell, and defendant Rogers; and
4) The Judgment of this Court signed August 4, 1988, being wholly subsumed by this Amended Judgment, is hereby vacated and annulled.
From this judgment, Ralph and Kacoo, Landry, Cooper and Stockwell, and Rogers appealed. On appeal, Ralph and Kacoo assign the following specifications of error:
(1) The trial court erred in finding that the right of passage and parking privileges were not delivered to the plaintiffs.
(2) The trial court erred in awarding damages to the plaintiffs.
(3) The trial court erred in reducing the attorney's fees awarded to the Olindes.
In appealing the judgment rendered against him, Landry assigns the following specifications of error:
(1) The trial court erred in its finding that the right of passage and the parking privileges had not been delivered to Cooper, Stockwell, and Rogers.
(2) Since no detriment resulted from any non-delivery, the trial court erred in awarding damages to Cooper, Stockwell, and Rogers.
(3) The trial court erred in finding that Landry, the attorney for the buyers [Clements], owed a duty to the Olindes [Ralph and Kacoo], the sellers.
(4) The trial court erred in failing to find that the negligence of the Olindes should reduce any award.
(5) The trial court erred in awarding attorney's fees in the amount of $47,000.00 to the Olindes.
Cooper and Stockwell assign the following errors in their appeal:
1. The Trial Court erred in valuing the servitudes of parking and passage.
2. The Trial Court erred in determining that the plaintiffs were deprived of only 12 parking spaces instead of 26.
Rogers appeals the trial court judgment, assigning the following errors:
1. The Trial Court erred in not allowing Rogers to assert a claim to his virile share of the damages awarded.
2. The Trial Court erred in precluding Rogers from asserting a claim against the Olindes for damages resulting from the Olindes' failure to deliver the servitudes.
3. The Trial Court erred in valuing the servitudes of parking and passage.

BREACH OF OBLIGATION TO DELIVER RIGHTS OF PASSAGE AND PARKING
Ralph and Kacoo contend that the trial court erred in finding that the parking and passage rights had not been delivered.
A written contract between two parties is the law as to those parties, and the courts are bound to enforce the contract as written. LSA-C.C. art. 1983; Quinn-L Corporation v. Elkins, 519 So.2d 1164 (La. App. 1st Cir.1987), writ granted, 520 So.2d 415 (La.1988). Legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. Quinn-L Corporation v. Elkins, 519 So.2d at 1174. An obligor is liable for the damages caused by his failure to perform, which results from nonperformance, defective performance, or delay in performance. LSA-C.C. art. 1994.
In the instant case, Ralph and Kacoo entered into an agreement on May 3, 1984, with Cooper, Stockwell, and Rogers to deliver certain passage and parking rights. The agreement contained the following language:
It is hereby understood and agreed that James Ralph Olinde and Catherine Glynn Olinde own Lot Y of a Resubdivision of Silverside Plantation and have signed an agreement to sell Lot Y [to Olinde and Clements and their spouses].
It is further understood and agreed that in that purchase agreement they have retained and reserved for the benefit of Lot X certain servitudes and parking rights on Lot Y.

*984 It is further understood and agreed that when the sale of Lot Y is completed, as further consideration for purchasers' acquiring Lot X, James Ralph Olinde and Catherine Glynn Olinde will transfer these rights to the purchasers of Lot X.
In Myers v. Myers, 532 So.2d 490, 494 (La.App. 1st Cir.1988), this court set forth the law regarding contract interpretation as follows:
Interpretation of a contract is the determination of the common intent of the parties. La.C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. C.C. art. 2046. Conversely, when the terms of a contract are susceptible to more than one interpretation, it is ambiguous and parol evidence may be used to show the true intent of the parties and various rules of interpretation become applicable. La.C.C. arts. 2045 et seq.; Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981). Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La.C.C. art. 2048. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La.C.C. art. 2049. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La.C.C. art. 2050. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La.C.C. art. 2053. In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation; however, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor. La.C.C. art. 2057.
After carefully reviewing the contract language, we find that Ralph and Kacoo had reserved certain rights of passage and parking for Lot X in a purchase agreement for Lot Y and agreed to transfer these rights to Cooper, Stockwell, and Rogers after the sale of Lot Y was completed. After reviewing the record and jurisprudence relative to predial servitudes, we cannot say that the trial court erred in finding that the parking rights and right of passage were intended to confer an advantage on Lot X such that they were intended to be predial servitudes. It is undisputed that, in the sale of Lot Y, Ralph and Kacoo did not preserve the rights of parking and passage and, therefore, could not subsequently transfer these rights to Cooper, Stockwell, and Rogers.
Clearly, Ralph and Kacoo failed to perform their obligation under the May 3, 1984 agreement and are liable for damages resulting from such nonperformance.

DAMAGES AWARDED ON MAIN DEMAND
Ralph and Kacoo contend that the trial judge erred in awarding damages on the main demand. Ralph and Kacoo reason that Cooper and Stockwell failed to establish that they suffered any damage as a result of the alleged breach of contract. Ralph and Kacoo further reason that the property valuations given by Lejeune, Cooper and Stockwell's expert, were erroneous.
Landry contends that Cooper and Stockwell did not suffer any damages as a result of the nondelivery of the rights of passage and parking and that the trial court erred in awarding damages.
Cooper and Stockwell contend that the trial judge erred in the amount of the award for damages in that the trial judge did not take into account the expert witness testimony, but made his own evaluation. Cooper and Stockwell also contend that the trial judge erred in limiting the number of *985 parking spaces for which damages are recoverable.
Generally, the trier of fact is not bound by expert testimony. The testimony of an expert witness is to be received and weighed in the same manner as any other evidence. White v. Givens, 491 So.2d 63, 65 (La.App. 1st Cir.1986); Motton v. Travelers Insurance Company, 484 So.2d 816, 820 (La.App. 1st Cir.1986). "The trial judge in determining the weight to give the testimony of an expert witness has much discretion, and may base his decision on the expert's qualifications, experience, and the facts on which he bases his opinion." Williams v. Anthony, 534 So.2d 458, 465 (La.App. 1st Cir.1988). See also Middle Tennessee Council, Inc. v. Ford, 274 So.2d 173, 177 (La.1973). Hobgood v. Aucoin, 558 So.2d 1285, 1295 (La.App. 1st Cir. 1990).[8]
In the instant case, Cooper and Stockwell presented the expert testimony of John Lejeune and Ralph and Kacoo presented the expert testimony of Oren W. Russell.
Lejeune, after comparing comparables, determined that the 50' by 299.24' servitude across lot 10-B-1-C-2 had a fee simple value of $7.50 per square foot. Lejeune then valued the servitude rights of this area at 80% of the value of the fee simple or $89,772.00. With regard to the parking rights, Lejeune estimated that each parking place was valued at $2,600.00 (260 sq. ft. × $10.00 per sq. ft.). Lejeune then discounted this value to $866.67, taking into account the fact that the parking rights were limited from 5:30 p.m. to midnight or 2:00 a.m. Lejeune assumed that twenty-six total parking places would be utilized and determined that the value of the twenty-six parking spaces was $18,779.00.
In valuing the parking rights, Russell determined that, prior to the sale to Cooper and Stockwell, Phyllie's Chillie Restaurant utilized ten to twelve parking places after 5:30 p.m. approximately forty to fifty times per year. Russell accepted Lejeune's estimate of the value per foot at $10.00, but determined that a typical parking place is only 200 sq. ft., rather than 260 sq. ft. as testified to by Lejeune. Russell calculated the rental rate of each parking place at $28.00 per day (200 sq. ft. × $10.00 × .10 [rental value] × .14 [50 days use per year]). Russell then adjusted this figure to account for the restricted usage of the parking places to reduce the value per parking place to $9.24. Russell placed a value on the total loss at $110.88 (12 places × $9.24). Russell then valued the parking rights, in perpetuity, at $924.00.
In valuing the right of passage, Russell stated that Cooper and Stockwell never connected the parking lot of Lot X to the servitude on Lot 10-B-1-C-2 and that the valuation of the servitude by Lejeune was erroneous. Russell pointed out that Lejeune's calculations were based upon the value of the loss a property owner suffers when a servitude is granted over his property, which is inappropriate in valuing the benefit to the property owner in whose favor the servitude has been granted. Russell opined that the value of Lot X was not diminished by the failure to deliver the servitude rights.
In the instant case, the trial judge, in his written reasons for judgment, stated:
The Court finds that each parking space was valued at $722.21 per space granted and that the maximum number of spaces utilized by the restaurant at any given time was twelve (12). Therefore, the defendants are liable to the plaintiffs for $8,666.52 for the value of the parking rights of which the plaintiffs were deprived.
The Court finds that the plaintiffs are entitled to $44,886.00 for the value of the right of passage. Both experts agreed that the `contribution to value' approach *986 was the appropriate way to determine the Fair Market Value of the property at issue. The experts, however, disagreed as to the measure of this value. Using a formula utilized in expropriation actions, the plaintiffs' expert valued the servitude property at $89,772.00. The defendants' expert, on the other hand, maintained that the servitude rights had no value. Defendants' contention was based on evidence that plaintiffs had never attempted to use the right of passage. Defendants also maintained that the Market Value of the property was not damaged as the property was later sold with potential purchasers told that the parking rights and right of passage was [sic] available for use by any purchaser.
Defendants also introduced evidence that the road which fronts the property at issue has been improved from a four lane to a six lane road.
The Court has no doubt that a servitude of right of passage has value. However, considering the evidence presented by the defendant, the Court has some reservation in accepting the plaintiffs' valuation of this right.
In valuing servitudes, our Courts have held that `each case should be decided on its own merits and not by some reference to an automatic percentage.' Dixie Electric Membership Corporation v. Watts, 268 So.2d 128 (La.App. 1 Cir.1972). Considering the law and the evidence, the Court finds that $44,886.00 is an appropriate valuation of the right at issue.
The trial judge accepted the plaintiffs' expert's testimony as to the value of each parking place, but disregarded his testimony as to the number of total parking spaces; the trial judge disregarded the defendants' expert's testimony as to the value of the parking places but accepted it as to the number of total parking spaces. We have thoroughly reviewed the record and find that there is evidence to support these evaluations of the expert testimony made by the trial judge. Furthermore, in accordance with the jurisprudential principles regarding expert testimony, we also note that the trial judge is not bound to accept the testimony of any expert in its entirety.
As to the right of passage, the trial judge accepted the plaintiffs' expert testimony that the right of passage had value. Yet in rejecting the valuation given by the plaintiffs' expert, the trial judge considered the defendants' evidence, which included their expert's testimony that the amount of square footage assigned to the right of passage by the plaintiffs' expert was too high since the road that Olinde and Clements built on the right of passage was 22 feet wide as opposed to the 50 feet which the plaintiffs' expert used for his valuation. The defendants' evidence also included expert testimony that the $7.50 per square foot valuation used by the plaintiffs was too high and that the 80% valuation used by the plaintiffs was too high. For these reasons, we cannot say that the trial judge abused his discretion in awarding the plaintiffs damages of $44,886.00 for the right of passage.

LANDRY'S DUTY TO RALPH AND KACOO
Landry contends that the trial court erred in finding that he owed a duty to Ralph and Kacoo. Landry reasons that, at all times, he represented Olinde and Clements in the sale of Lot Y, and that he did not, at any time, represent Ralph and Kacoo.
After trial on the third party demand, the trial judge, in his written reasons for judgment, stated:
It is alleged by the Olindes that Landry breached a duty owed to them either as an attorney or notary in the closing of the sale of Lot Y by the Olindes to John Clements.
There are two versions of what happened at the closing. Ralph Olinde testified that the entire closing took only a few minutes and denied any discussion about the servitudes. Steve Landry testified that a discussion of the right of passage and parking took place and that John Clements advised that he would permit the parking and passage servitudes, but that same could not be recorded because of the lender's objection.

*987 Landry maintains that Olinde agreed that these rights need not be recorded.
During this discussion Landry testified that one question was asked by Olinde to Landry: What would be the effect if the rights of passage and parking were not recorded. [sic] In Clements's presence and with Clements's permission, Landry responded and explained that the Olindes would have to look to Clements to honor these rights and that these rights would not `run with the land.'
Regardless of which version is accurate, this court finds that the defendant, Steven Landry, owed a duty to fully explain to the Olindes the legal ramifications of the failure to include the servitude rights in the sale agreement or to see to it that the Olindes contact their attorney to represent them.
Mr. Landry was aware of the Olindes [sic] legal obligation to transfer these servitudes to Cooper and Stockwell, and talked to an attorney, Roland Kizer, who had represented the Olindes and had discussed with Mr. Kizer the reservations of the servitudes and the need to include this reservation in the Olinde to Clement sale.
This duty owed by Landry did not arise by employment by the Olindes as their lawyer or notary. This duty arises from Landry's expert knowledge as an attorney or notary as to what could and did happen to the Olindes if the servitudes were not recorded. Kizer had informed Landry that there were some rights Landry had to reserve and that Kizer would send him a copy of the Olindes' agreement with Cooper, Stockwell, and Rogers which obligated the Olindes to transfer these rights to them.
Public policy requires that an attorney exercise his position of trust and superior knowledge responsibly so as not to affect adversely persons whose rights and interest are certain and foreseeable.
If, as Landry testified, the Olindes and the defendant discussed what would be the effect if the rights of passage and parking were not recorded, Landry's advice was not complete since Landry did not inform the Olindes of the risk that they might be sued if they accepted these rights as only `personal' rights since Landry knew the Olindes were obligated to transfer these rights to Cooper, Stockwell, and Rogers.
Under the circumstances of this case, Landry was bound to give all the information and advice that was necessary to enable the Olindes to act with the benefit and understanding of all the knowledge which Landry had acquired from Kizer and his preparation of the sale documents. This he did not do.
On the other hand, if the effect of leaving out the right of passage and parking was not discussed, as the Olindes maintain, Landry should have instructed the Olindes to seek another attorney's advice before allowing them to sign the document which he had prepared, as Landry was aware of the Olindes [sic] obligation to Cooper, et. al. from his conversation with Kizer.
. . . .
[I]n this case Landry was certainly aware that the Olindes were relying on him to fully inform them of the effect of not recording the `servitudes.' Therefore Landry is liable to the Olindes for the damages which resulted from the variations or omissions in the sale document.
In Penalber v. Blount, 550 So.2d 577, 581 (La.1989), the Louisiana Supreme Court recently discussed the duty owed by an attorney to a non-client as follows:
Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf. See C & V Gravel, Inc. v. Maco Constr. Corp. [465 So.2d 938 (La.App.2d Cir.1985)], supra; Spencer v. Burglass [337 So.2d 596 (La.App. 4th Cir.1976)], supra; McReynolds v. Kruse [440 So.2d 791 (La.App. 1st Cir.1983)], supra; Lowe v. Continental Ins. Co. [437 So.2d 925 (La.App.2d Cir.) ], supra; Olympia Roofing Co., Inc. v. City of New Orleans, 288 So.2d 670 (La.App. 4th Cir.1974), writ den., 292 So.2d 244 (La.1974), 61 A.L.R. 4th 443 (1988); cf. Deville v. Zaunbrecher, 401 *988 So.2d 643 (La.App. 3d Cir.1981), reh. den. A non-client, therefore, generally cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation. The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed a client. See C & V Gravel, Inc. v. Maco Constr. Corp., supra.
An attorney's duty is to zealously represent his client. To accomplish this obligation, adversarial counsel must not be hampered by fear of personal liability for negligently injurying [sic] his client's opponent. The attorney's paramount duty is to his client. As such, not even the Rules of Professional Conduct create actionable duties for negligent injury of a client's adversary or negligent breach of professional obligations which might run in favor of his client's adversary. See Spencer v. Burglass, supra.
The court further noted that:
[E]ven though an attorney does not generally owe a duty to his client's adversary, under the broad ambit of LSA-C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct such as knowingly seizing public assets in direct violation of LSA-R.S. 13:5109 and LSA-Const. Art. 12, § 10. Accord, Lucas v. Ludwig, 313 So.2d 12 (La.App. 4th Cir.1975), writ den., 318 So.2d 42 (La.1975) [landlord prevailed on an invasion of privacy action against her former tenant and his attorney for their tortious attempt to coerce her into releasing former tenant's property]; Shaw v. Everett, unpublished, CA-8615 (La.App. 4th Cir.1988), writ den., 531 So.2d 275 (La.1988) [denied defendant attorney's objection of no cause of action based, in part, on allegations that attorney intentionally breached Rules 1.2(c); 1.15(b); and 3.3(a)(2) ]. See also Olympia Roofing Co., Inc. v. City of New Orleans, supra.
The basic difference between an intentional tort and a negligent act is briefly explained in Bazley v. Tortorich, 397 So.2d 475 (La.1981). A more recent treatment of the subject matter is found in Caudle v. Betts, 512 So.2d 389 (La. 1987). Numerous authorities and commentaries are cited and the opinion notes:
The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Restatement (Second) of Torts, American Law Institute § 13, (comment e) (1965). Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although ... honestly believing that the act would not injure the plaintiff.... W. Prosser and W. Keeton, The Law of Torts, § 9 (5th ed. 1984). 512 So.2d at 391.
550 So.2d at 582. (Emphasis ours).
After carefully reviewing the entire record in this matter, we find that neither factual version as to what transpired on the date of closing of the sale of Lot Y gives rise to recovery for an intentional tort. The record does not support a finding that Landry intended to invade the interest of Ralph and Kacoo in a manner forbidden under the law.
Therefore, we find that the trial court erred in finding Landry liable to Ralph and Kacoo on the third party demand.

NEGLIGENCE OF RALPH AND KACOO
We determined that Landry was not liable to Ralph and Kacoo; therefore, we pretermit any discussion on this issue.

AWARD OF ATTORNEY'S FEES TO RALPH AND KACOO
Because of our determination that Landry did not owe a duty to Ralph and Kacoo and our reversal of the trial court judgment on the third party demand, we find it unnecessary to address this issue.

ROGERS' CLAIM
Rogers contends that the trial court erred in refusing to allow him to assert a *989 claim for his virile share of the damages awarded on the main demand and in precluding Rogers from ever asserting a claim for damages against Ralph and Kacoo for failure to deliver the rights of parking and passage.
Generally, compulsory joinder defines the parameters wherein a litigant's right to select his adversary is limited by the need to join certain persons for complete adjudication of a claim. Two fundamental principles lie at the core of rules mandating the joinder of parties in a given suit: (1) a court will not adjudicate the rights of a person not before the tribunal and (2) a court avoids rendering inconclusive judgments. This second principle also gives rise to judicial distaste for piecemeal litigation, which overburdens courts, delays a final resolution of issues, and increases the cost of adjudication. The rule favoring dispositive judgments reflects that the public interest in a smoothly functioning judiciary overbears the individual's desire to impose on the court's time to secure a moot decision or to have two determinations where one would suffice. See Reed, Compulsory Joinder of Parties in Civil Actions, 55 Mich. L.Rev. 328 (1957).
LSA-C.C.P. art. 644 provides:
If an indispensable party, or a necessary party subject to the jurisdiction of the court, who should join as a plaintiff refuses or fails to do so, he may be joined as a defendant and required to assert his rights in the action or be precluded thereafter from asserting them.
Since State of Louisiana, through Department of Highways v. Lamar Advertising Company of Louisiana, Inc., 279 So.2d 671 (La.1973), the courts of this state have continued to mandate joinder when it will prove a plaintiff's right of action or will define the scope of a defendant's liability or obligations. See Tropicana Pools South, Inc. v. Chamberlain, 324 So.2d 29 (La.App. 2d Cir.1975).
In the instant case, Cooper and Stockwell, who were co-owners of Lot X with Rogers, filed suit as plaintiffs. Rogers, however, did not join his co-owners as a plaintiff and was named as a defendant by Cooper and Stockwell. In their petition, Cooper and Stockwell made the following allegation:
CHARLES JAMES ROGERS, an individual of full age of majority and domiciled in the Parish of East Baton Rouge, State of Louisiana, made defendant herein under Article 644 of the Code of Civil Procedure of the State of Louisiana in that he is an indispensible [sic] and necessary party to this litigation who has failed or refused to join as petitioner and he is hereby joined as defendant and should be required to assert his rights in this action or be precluded thereafter from asserting them.
Further, Cooper and Stockwell requested that Rogers be served with a copy of the petition. Although the subsequent amended petition named Rogers as a defendant, it failed to designate service upon him; however, the new allegations contained in the amended petition did not substantively affect Rogers. Rogers did not answer either petition, retain counsel, or file any request for relief for himself. Rogers was at the trial on the main demand, testifying as a witness. After the trial court rendered judgment adjudicating the main demand, Rogers filed a motion for new trial "on the sole issue of the assertion of his rights" against Ralph and Kacoo, alleging that he had not been served with the amended petition, made a formal appearance or been represented by counsel or served notice of the trial. Rogers further alleged the trial court judgment signed on August 4, 1988, did not adjudicate his rights. Rogers, therefore, requested a new trial to dispose of his claim for damages.
The trial court, in granting Rogers' motion, stated:
The Court is of the opinion that Mr. Rogers was properly joined pursuant to Article 644 and had ample notice of the pendency of the proceedings and of the trial held in this matter. However, Mr. Rogers failed or neglected to assert his claim prior to trial and the entry of judgment. The Court, therefore, finds that Mr. Rogers is precluded from asserting a claim to his virile share of the damages *990 found by the Court, pursuant to Article 644 of the Code.
The trial court subsequently rendered an amended judgment against Rogers, refusing to award damages and precluding him for obtaining judgment for such damages.
We agree. Rogers was named as a defendant by his co-owners, was served with process and testified at trial. He was clearly properly before the tribunal. The fact that Rogers chose not to be represented or request relief in his favor until after the case had been adjudicated does not require that judgment be rendered in his favor.
Accordingly, we find that Rogers, who failed to assert a claim for damages prior to judgment on the merits, is not entitled to relief, and the trial judge properly amended its judgment, denying Rogers' claim and precluding any further assertion of his right to damages.

CONCLUSION
For the above reasons, that portion of the trial court judgment finding Landry liable on the third party demand and awarding Ralph and Kacoo damages is reversed. In all other respects, the judgment of the trial court is affirmed.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] It is undisputed, however, that Clements personally agreed to permit the customers of Lot X to park in the parking spaces of the professional complex to be constructed and to have use of the passageway to be constructed on Lot 10-B-1-C-2 to connect Lots Y and 10-B-1-C-1 with Summa Avenue.
[2] Professional Centre is a Louisiana General Partnership domiciled in East Baton Rouge Parish, whose partners are John M. Clements and Henry D.H. Olinde.
[3] American Bank & Trust Company financed the acquisition of Phyllie's Chillie by Cooper, Stockwell, and Rogers.
[4] The petition of foreclosure also affected certain movable property, none of which is pertinent to our inquiry herein.
[5] At trial of the matter, Cooper and Stockwell abandoned their claim for rescission. The disposition of the injunctive relief is not pertinent to this appeal.
[6] In their petition, Cooper and Stockwell alleged that Rogers was an indispensable and necessary party to the litigation, who had failed to join as a petitioner, and that he was joined as a defendant and should be required to assert his rights in the action or be precluded thereafter from asserting them.
[7] Capital Bank & Trust Company issued a letter of credit to Ralph and Kacoo; however, any issues as to this party are not before us on appeal.
[8] We note that there are two recent First Circuit cases wherein this court held that the trial judge should not disregard expert testimony and fix his own value where the expert testimony is based on correct facts and good reasoning. Watts v. Watts, 552 So.2d 738, 740 (La.App. 1st Cir.1989); McGehee v. McGehee, 543 So.2d 1126 (La.App. 1st Cir.), writ denied, 548 So.2d 327 (La.1989). While the results are correct in those cases, we believe the jurisprudential rule propounded therein to be limited to the factual situations of these cases.