268 So.2d 314 (1972)
Benny E. FIRSTLEY, Jr., et al.
v.
BILL WATSON FORD, INC., et al.
No. 5025.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1972.
Rehearings Denied November 8, 1972.
*315 Joseph W. Nelkin, New Orleans, for plaintiffs-appellees.
Beard, Blue, Schmitt & Treen, Robert M. Johnston, New Orleans, for Bill Watson Ford, Inc., defendant-appellee.
Gerald A. Stewart, New Orleans, for defendants-appellees.
Bruce J. Borrello, New Orleans, for defendant-appellant.
Before SAMUEL, CHASEZ and GULOTTA, JJ.
SAMUEL, Judge.
Although the record in this matter contains some directly conflicting testimony, from our understanding of the trial court's reasons for judgment he found, and we also find, the facts to be as follows:
On Saturday, September 28, 1968, Benny E. Firstley, Jr., one of the plaintiffs herein, went to the business premises of Bill Watson Ford, Inc. in New Orleans and purchased a Ford Galaxie, giving $1,000 as the down payment therefor. Since the new car would not be ready until the following Monday, Firstley was given a Ford demonstrator to drive over the weekend.
The following day, Sunday, Firstley and the other four plaintiffs were driving in the demonstrator when they were stopped by two New Orleans police officers, Crawford and Clogher. Plaintiffs were removed from the automobile by the officers and searched and interrogated on Gentilly Road. Upon checking by radio with Sergeant Miorana of the Auto Theft Bureau of the New Orleans Police Department, the officers discovered that the demonstrator was on the police list as a stolen car. Plaintiffs were incarcerated in the New Orleans Central Lockup and charged with the theft and possession of the demonstrator.
Early Monday morning two plaintiff wives went to Watson Ford and were told *316 the latter had sent a man to get their husbands out of jail. Twice more during the day, one or both of the two wives returned to Watson Ford and were assured that Watson Ford was arranging the release of the plaintiffs. In actual fact Watson Ford's efforts consisted only of a telephone call (or possibly two such calls) to the Auto Theft Bureau informing the Bureau the car previously had been recovered and plaintiffs were not guilty of its theft. Watson Ford made no other effort to obtain the release of plaintiffs.
Late Monday afternoon plaintiffs were arraigned in criminal court on charges of theft and possession, each pleaded not guilty, and bond was set at $500 for each. The same day four were released on posting bond and one was released on his personal recognizance.
What had actually happened, insofar as the demonstrator was concerned, was that on March 12, 1968, as a result of a disagreement with a former salesman who had driven off with the car, Watson Ford had reported to the police that the demonstrator had been stolen. Although Watson Ford subsequently recovered the car without police intervention, it had not informed the police of such recovery.
Following his release from jail, Firstley went to Watson Ford and demanded return of his $1,000 payment. The demand was refused. Firstley was told his check had been cashed and therefore he could not get his money back, but that he could take the demonstrator in which he had been arrested on purchase terms outlined to him at that time. After considerable discussion, Firstley accepted the deal and purchased the demonstrator. The $1,000 was used as the cash payment and the balance of the price was financed through a local finance company.
Firstley kept possession of, and used, the car. He made a total of seven monthly payments "under protest" and then made no further payments. The finance company foreclosed and the vehicle was sold.
This suit was then instituted by all five plaintiffs for damages as a result of their incarceration and the criminal charges made against them and, in addition, by Firstley for the return of the $1,000 payment. After trial there was judgment in favor of the five plaintiffs in the amount of $3,000 each against Watson Ford only. Firstley's demand for return of the $1,000 payment was rejected and the suit was dismissed as to all defendants except Watson Ford.
Watson Ford has appealed seeking reversal of the judgment casting that defendant and, alternatively, a decrease in the amounts of the awards. Plaintiffs also have appealed from those portions of the judgment which dismiss the City of New Orleans and the individual police officers and which reject Firstley's demand for the return of the $1,000. Plaintiffs further seek an increase in the amounts of the awards made in their favor for damages.
In this court Watson Ford contends: (1) Quite some time before the incident in suit it had notified the police that the car had been recovered and the police neglected to remove the same from its list of stolen cars; and (2) plaintiffs cannot recover in damages because of their failure to show an absence of probable cause and a presence of malice.
The first contention is completely factual. A Watson Ford manager did testify that several months before the incident in suit he had notified the police by telephone that the car had been recovered. He stated the police themselves reported the stolen car abandoned and two of his salesmen retrieved the vehicle. One of those salesmen allegedly was dead and the other was a man whose name he could not recall. The trial court did not believe this testimony and found that if the recovery had been reported the car would have been removed from the list of stolen cars. We agree with that finding and that conclusion.
The second contention also is without merit. In seeking to have us reject *317 plaintiffs' demands for damages because of an absence of showings of no probable cause and the presence of malice (a plaintiff burden in a suit for malicious prosecution), this appellant seeks to have us consider the suit for damages as being based on malicious prosecution.[1] Clearly, this is not a case of malicious prosecution; there was no prosecution on the part of Watson Ford. This is a tort suit based on negligence. The sole cause of plaintiffs' incarceration and the criminal charges made against them was Watson Ford's negligence in causing Firstley to use a demonstrator which Watson Ford had reported as stolen and which it had never reported as recovered. The fact that the vehicle remained on the police list of stolen cars made it probable that in the event it was stopped by the police for any reason its driver and other occupants would be arrested as a result of being the operator and occupants of a stolen car. Watson Ford is liable for the damages resulting from that negligence.
We also find no merit in the contention made by all plaintiffs that the City of New Orleans and the individual police officers are liable in damages. The police officers who are defendants are the two arresting officers and the policeman who, in response to inquiry, informed the arresting officers that the car was listed as stolen. Without the need of any further discussion, it is quite clear the arresting officers acted properly in making the arrests and charges in view of the fact that the automobile was so listed. And, of course, we see no liability on the part of the third officer who merely gave the information, as it was his duty to do, that the car was on the list of stolen automobiles.
The only other possible source of liability on the part of the City of New Orleans is the fact that the police did not cause the charges to be dismissed and the plaintiffs released after receiving a call from Watson Ford on that Monday morning informing them that the car was not a stolen vehicle. Within the time period involved, from Monday morning until Monday afternoon when the plaintiffs were actually released from jail, the police could not reasonably be expected to effect the dismissal of the criminal charges and the release of the plaintiffs. Those matters are the concern of the district attorney's office and the court itself. The police had no authority other than to forward the information to the district attorney's office. And only a mere telephone call certainly would be far from sufficient to result in dismissal and release.
We also find no merit in Firstley's demand for the return of the $1,000 payment. At the time he made the purchase he was aware of all of the facts. Despite this he agreed to purchase the demonstrator. He then used the car for approximately 8 months until its seizure and sale. Plaintiffs have cited no theory of law which could result in a rescission of the sale or a required return of the $1,000 to Firstley, and we know of none.
Finally, as to quantum, the facts are that the plaintiffs were arrested, incarcerated and charged with theft and possession of the "stolen" vehicle. They remained in jail for approximately 26 hours. We have examined the jurisprudence cited by plaintiffs and by Watson Ford and we have also examined other jurisprudence. Our conclusion is that the awards of $3,000 to each of the plaintiffs is neither so excessive or so inadequate as to constitute an abuse of the much discretion enjoyed by the trial judge relative to the setting of the amounts of the awards.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] Watson Ford cites Cormier v. Blake, La. App., 198 So.2d 139; Cox v. Cashio, La.App., 96 So.2d 872; and Kenner v. Milner, La.App., 187 So. 309.