337 So.2d 596 (1976)
Rowena SPENCER, M. D.
v.
Harry A. BURGLASS.
No. 7576.
Court of Appeal of Louisiana, Fourth Circuit.
August 31, 1976.
Rehearing Denied October 13, 1976.
*598 Michael H. Bagot and John H. Gniady, New Orleans, for plaintiff-appellant.
Harry A. Burglass and James O. Manning, Metairie, for defendant-appellee.
Before REDMANN, BOUTALL and SCHOTT, JJ.
SCHOTT, Judge.
Plaintiff, a physician, seeks damages for embarrassment, discomfort and lost time against defendant, an attorney. She alleges that defendant filed a suit against her in the Civil District Court for the Parish of Orleans, in which suit one Stephen Lester Parker, individually, and for and on behalf of the child, Adam Parker, sought damages against her and her insurer resulting from her negligence as a physician or medical malpractice in operating upon and damaging the body of the Parker child. Alleging that she won the medical malpractice case, plaintiff further alleges that defendant called only two witnesses, both doctors, at the trial of the malpractice case and they both testified favorably to her. She alleges that the records of the hospital, produced at the malpractice trial, showed that four doctors who had examined the child found no damage to his body in any way. The petition further contains the following pertinent allegations:

"VII.
Neither Dr. Charles Wasserman nor Dr. Harold M. Albert were consulted by defendant regarding Civil Action 488-060 prior to the date of trial which failure was a violation of the duty owed by the defendant to the public at large and specifically to your petitioner, Dr. Rowena Spencer.

"VIII.
Your petitioner shows that it is the duty of an attorney-at-law effectively to prosecute on behalf of his clients such rights or causes of action as they may have, and it is also his duty to refrain from frivolously filing suits which have no basis in law or in fact.

"XII.
That it is hereinabove alleged that petitioner's entire loss was caused by the failure of Defendant, Harry A. Burglass, to interview and consult with his witnesses prior to the filing of suit or trial, the failure to determine the physical condition *599 of the child, Adam Parker, by competent medical advice, the failure to determine from competent medical authority the proper procedure concerning the physical condition of the said child at the time in question and the breach of the general duty owed by defendant, Harry A. Burglass, to the public at large and particularly to your petitioner, Dr. Rowena Spencer."
When this matter was before us previously, Spencer v. Burglass, 288 So.2d 68 (La.App. 4th Cir. 1976), the appeal was dismissed because the trial court had maintained an exception of no cause of action and had granted plaintiff time in which to file supplemental and amended pleadings under penalty of dismissal. But no dismissal had been ordered by the trial court so that the judgment then appealed from was not final. However, a subsequent judgment of the trial court dismissed plaintiff's suit at her cost and it is this judgment which is now on appeal by plaintiff.
Plaintiff contends that she states a cause of action by her allegations that defendant owed an affirmative duty to her and to the public at large to refrain from filing groundless litigation, and that he breached this duty. Alternatively, she contends that while the word "malice" is not used in her petition, her allegations imply malice and support an action for malicious prosecution.
Taking the second contention first, in a recent discussion of malicious prosecution as a cause of action in Johnson v. Pearce, 313 So.2d 812 (La.1975), the Supreme Court reiterated that one of the elements necessary to support a malicious prosecution case is the presence of malice therein. In Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2nd Cir. 1975), it was said that malice exists where the charge is made with knowledge that it is false or with a reckless disregard as to whether it is false or not.
Plaintiff contends that the quoted paragraphs of her petition are tantamount to allegations that defendant filed the suit with malice, that is, with knowledge that the allegations of malpractice on the part of plaintiff were false or with a reckless disregard as to whether those allegations were false or not. This proposition is simply not supported by the plain wording of plaintiff's petition.
When the paragraphs of plaintiff's petition quoted above are analyzed it appears that defendant is charged with, 1) frivolously filing the suit and 2) failing to interview witnesses before he filed suit or tried the case and 3) failing to obtain "competent medical advice" in violation of a "general duty" owed to the public in general and plaintiff in particular.
There are no factual allegations to suggest that when defendant filed his client's suit he knew the allegations were false or that he had a reckless disregard as to whether the allegations were false or not. On the contrary, plaintiff's allegations are to the effect that defendant simply did not know enough about the case at the time he filed it and now in retrospect plaintiff would say this was malice on defendant's part. If that be so many a successful lawsuit would never have been or never would be filed because oftentimes the case comes to the attorney just prior to prescription date and the evidence is not discovered and developed until after the suit is filed. We therefore conclude that the allegation of "frivolously filing suits" cannot be construed as an allegation of malice.
Next, we consider whether defendant's alleged failure to interview his witnesses prior to trial constituted malice. We can construe this allegation to mean negligence or ineptitude on defendant's part in his trial preparations and perhaps, if this caused the loss of the case, this failure might provide a basis for an action in malpractice against him by his client, but we cannot construe the naked allegation to imply that defendant's failure to interview his witnesses before trial constituted a reckless disregard as to whether his client's (not his) charge of malpractice against plaintiff was false or not. In other words this allegation simply does not imply malice on defendant's part.
*600 Finally, there is the allegation that defendant failed to obtain "competent medical advice," etc. Does this constitute an allegation of malice? It would seem that an affirmative answer to this query would mean that before the attorney brings a malpractice case to trial he must find a medical person who supports the attorney's theory or that of his client, who is willing to testify favorably and who is "competent" by someone's (plaintiff's?) standards. If he finds no such person but he nevertheless, places whatever evidence he can before the court perhaps relying on circumstantial evidence, reasonable inferences and common sense and perhaps realizing that he will probably lose, he runs the risk of having his conduct branded as malicious. When the bald allegation in question is considered in this light it can hardly be construed as one alleging malice. At worst, the allegation is that defendant went to trial with a poor case and got his just desserts, to wit, he lost. If that constitutes malice, the courtrooms are full of malicious attorneys. This we cannot accept.
Furthermore, the notion that defendant as the attorney for the party in the malpractice case was guilty of malicious prosecution seems to distort the role of an attorney in any case. The suit was filed by the attorney only in a technical sense since he may have signed the petition, but it was in fact an action instigated and carried on by the plaintiff in that malpractice case himself. We must assume that this plaintiff thought his child had been damaged by the doctor irrespective of the fact that no doctor agreed with him. He was intent upon placing the facts before a judge or jury for a judicial determination as to whether the doctor had failed in her duty toward the child. His attorney, defendant herein, was simply the instrument through which he invoked the judicial determination and in the absence of some allegation which would support specific malice by this attorney motivating him to persuade his client to initiate and continue his malpractice case against the doctor, no cause of action is stated against defendant as an attorney for malicious prosecution.
Plaintiff's principal contention is that defendant somehow breached a duty he had to her to avoid filing, or at least continuing with, the prosecution of a suit he knew or should have known was frivolous and could not be successful. To establish the alleged duty plaintiff cites the oath taken by an attorney upon his admission to the practice of law which includes:
"You will not counsel or maintain any suit or proceeding which shall appear to you to be unjust, nor any defense except such as you believe to be honestly debatable under the law of the land;"
Plaintiff also cites Canon 30 from the Canons of Professional Ethics which were in effect at the time the medical malpractice suit was filed against her. Canon 30, captioned Justifiable and Unjustifiable Litigations, provides:
The lawyer must decline to conduct a civil cause or to make a defense when convinced that it is intended merely to harass or to injure the opposite party or to work oppression or wrong, . . . His appearance in Court shall be deemed equivalent to an assertion on his honor that in his opinion his client's case is one proper for judicial determination."
Plaintiff has cited no authority for her proposition that these standards provide her with a cause of action under a general tort or negligence concept. In order to establish liability on that theory plaintiff must allege and prove that defendant's filing the suit against her was a cause in fact of her alleged damages, that defendant breached a duty which created the very risk which the duty was designed to prevent and that defendant was negligent in filing the suit and/or trying the case against her. See Prattini v. Whorton, 326 So.2d 576 (La.App. 4th Cir. 1976) for discussion and application of duty-risk principle.
When plaintiff's petition is evaluated in the light of this principle we must conclude that she fails to state a cause of action. This conclusion is based primarily on the failure of the petition to allege any facts to support the proposition that defendant's *601 duty under Canon 30 and his oath was designed solely to prevent the risk of plaintiff's being piqued at being sued. This would be an over simplification of the ethical complexities which govern the lawyer's conduct to his client, the court and the public.
For example, we have already indicated that defendant's initial filing of the suit can hardly be regarded as a breach of duty because this presupposes that he should have known at that early state of the litigation that no convincing evidence could be discovered or developed. But when the time came for the trial of the case, and he still had no evidence, his duty to plaintiff to drop the case was tempered by such considerations as are found in Canon 42 which was also binding on defendant as was Canon 30, and which provided:
"Withdrawal from employment as attorney or counsel. The right of an attorney or counsel to withdraw from employment, once assumed, arises only from good cause. Even the desire or consent of the client is not always sufficient. The lawyer shall not throw up the unfinished task to the detriment of his client except for reasons of honor or self-respect. If the client insists upon an unjust or immoral course in the conduct of his case, or if he persists over the attorney's remonstrance in presenting frivolous defenses, or if he deliberately disregards an agreement or obligation as to fees or expenses, the lawyer may be warranted in withdrawing on due notice to the client, allowing him time to employ another lawyer. So also when a lawyer discovers that his client has no case and the client is determined to continue it; or even if the lawyer finds himself incapable of conducting the case effectively. Sundry other instances may arise in which withdrawal is to be justified. Upon withdrawing from a case after a retainer has been paid, the attorney shall refund such part of the retainer as has not been clearly earned."
It becomes obvious that defendant's problem was far more complicated than plaintiff alleges it to have been. She would fault defendant for bringing his client's case to trial, in reality for not withdrawing from the case before trial, because of his duty to her. But she makes no allegation that such a withdrawal was possible or at least practical in the light of defendant's duty to his client under the quoted canon. Perhaps the defendant, more than anyone, wanted to get out of this case, because no attorney enjoys the prosecution of a case in which he has little or no confidence. But under Canon 42 his freedom to withdraw was tempered by the interests of his client, subjective considerations of honor and self-respect and an evaluation of his client's subjective motives for pursuing the litigation and then the canon says he "may be warranted in withdrawing." This permissive, not directive or mandatory, withdrawing is then applied to the situation where "a lawyer discovers that his client has no case and the client is determined to continue it."
Thus, defendant violated no duty in the final analysis under plaintiff's allegations because even accepting everything she alleged as true and interpreting her allegations to mean that defendant at some point discovered that his client had no case, Canon 42 merely permitted, but did not require, defendant to withdraw.
If we were to hold that plaintiff states a cause of action against defendant in this case we would have to consider our opinion in the light of the following from Johnson v. Pearce, supra:
"As a general proposition, therefore, public policy requires that all persons shall fully resort to the courts for redress of wrongs, and the law protects them when they act in good faith upon reasonable grounds in commencing either a civil or criminal proceeding."
Surely, in any case where a suit is filed by a defendant who was vindicated in a contested case against the attorney for the plaintiff some consideration must be given to the "chilling effect" such an action might have on the basic right of a citizen to seek redress in court for what he considers to be a wrong.
*602 Accordingly, the judgment appealed from is affirmed.
AFFIRMED.
REDMANN, J., dissents with written reasons.
REDMANN, Judge (dissenting).
Louisiana's law is not the common law. Louisiana's law is found in its Civil Code and its other statutes. The Civil Code, art. 2315, obliges one to repair damage caused by his fault. This is a public policy of Louisiana, declared by our legislature. There is no Code article or statute relieving liability for fault-caused damage in certain cases because of lack of malice. Liability is imposed whenever the complained-of behavior was both fault and causative of the damage.
The skeleton concept of fault takes flesh from other public policies. One such policy is our society's demand that courts be open to remedy injury, La.Const. art. 1, § 22. One with even the least cause to call another to court must be able to do so in freedom, unmenaced by liability, in case one loses, for the other's resultant damages (other than certain costs, which we routinely award). Because of the dominance of the policy of courts' being open, the policy of liability for fault-caused damage cannot include taking another to court within its fault-concept, unless there is no arguable justification for having done so. Arguable justification is all that can be asked consistent with the open courts policy: a plaintiff need not have any particular probability of winning. And no arguable justification, in Louisiana, is the only meaning attributable to the sometimes-parroted common-law "malicious prosecution" elements of "without probable cause" and "with malice." (See Jones v. Simonson, La.App.1974, 292 So.2d 251.) "Malicious prosecution" may be a convenient shorthand description in Louisianalike "malpractice" or "slip and fall"but it is not law in Louisiana; it is not a legislative limit on the legislation of C.C. 2315. "Without probable cause" indicates (perhaps understates) the necessary limitation of "fault" to bringing suit without arguable justification. But "with malice" is insupportable except insofar as it strengthens or illuminates "without probable cause," to clarify that the asserted cause must be so improbable that merely having brought or tried the wholly unfounded suit indicates a malice.
Our predecessor court, speaking in the common-law phrases, has ruled that malice may be inferred "from proof of the lack of probable cause." Buisson v. Prestia, La.App.Orl.1950, 45 So.2d 531, 533. We have ourselves awarded damages for an unjustifiable detention which was neither a "false" arrest nor a "malicious" prosecution, in Firstley v. Bill Watson Ford, Inc., La.App. 1972, 268 So.2d 314. If, as Jones suggested, 292 So.2d at 253, "malicious prosecution could be found in Firstley from the unconcern with which the dealer loaned to an innocent party a car previously reported stolen," malice can in our case be found from the unconcern with which defendant lawyer prosecuted an action against our plaintiff without (as I construe the present petition) any evidence whatsoever.
It requires little to defeat an action like the present one. One obvious possibility is that, at trial or by motion for summary judgment, defendant would present evidence tending to establish that there was medical malpractice (despite defendant lawyer's failure to present that same evidence at the malpractice trial). But the question before us is only whether the petition sufficiently states a cause of action to allow trial to be had. In my opinion it does.
The petition alleges that plaintiff operated on the Parker child on February 27, 1968; that on February 19, 1969 (eight days before tort prescription was to accrue), defendant lawyer filed suit for the Parkers, "based upon malpractice, and charg[ing] your petitioner with negligence in operating upon the minor child . . ., and [based?] on damage to the child's body"; that defendant lawyer at the malpractice trial called only two witnesses, both doctors who testified plaintiff's treatment was proper and that they could detect no damage *603 to the child; that neither witness had been consulted by defendant prior to trial; that plaintiff's damages were caused by defendant's failure "to interview and consult with his witnesses prior to the filing of suit or trial, [his] failure to determine the physical condition of the child" etc.; that the first suit ended in judgment for our plaintiff doctor on April 6, 1971.
We had summarized the present petition, on the earlier appeal, as alleging defendant "had both filed and tried a medical malpractice suit without . . . ever having any medical expert evidence of malpractice," 288 So.2d 68 (nor, I now add, any evidence of "damage to the child's body"). The allegations of "negligence in operating" are of a kind that require some sort of medical testimony, unless the operating produced some self-evident anomalous result (e. g., the wrong leg cut off). The allegation of "damage to the child's body" might have been proved without medical evidence: but the present petition alleges "failure [by defendant lawyer] to determine the physical condition of the child" (and further alleges that the two doctor witnesses "could detect no damage to the child"), thus fairly asserting that defendant lawyer did not even inquire into the child's alleged bodily damage (which was non-existent). In sum, the present petition alleges substantially that defendant lawyer had no medical evidence and no non-medical evidence of medical malpractice or of res-ipsatype or other self-evident physical injury, yet not only filed but also tried the suit.
As to the filing of the suit a few days before prescription would have barred it, no cause of action is stated. For all that is alleged, defendant lawyer may not have been retained until about the time of the filing, when he had no practical choice other than to file to preserve the client's claim from prescription. The lawyer must be allowed to place some credence in the client's assertion of facts supporting the claim, and therefore could have acted reasonably in filing the suit.
As to the trying of the suit, however, a different view should prevail. Over three years passed between filing and trying the suit, during which defendant lawyer should have informed himself of the facts of the case, by obtaining some evidence, medical or lay, tending to support the claim. Had defendant sought evidence, he would (apparently) have learned that there was no evidence of malpractice or physical damage to the child: and had he learned this, he would have known he was obliged, by the general legal duty not to injure another, C.C. 2315, at least to withdraw from the proceeding against our plaintiff.
The petition may be vague; but it states a cause of action. The judgment appealed from should therefore be reversed.