SCHOTT, Judge.
Defendant, an automobile dealer, in taking an inventory in December, 1976, of its stock of used automobiles found a 1969 Ford to be missing and reported this to the New Orleans Police Department. On April *352 2,1977, plaintiff was driving the automobile and was stopped by the police. When he was unable to produce ownership papers he was arrested and charged with possessing stolen property and was held in jail for 12 hours before being released. Plaintiff claimed he bought the car from defendant in July, 1976, when he gave defendant’s employee, John Stevens, $500 in cash toward the purchase price of $1100. The trial judge found that Stevens was an employee of defendant and had sold the automobile on defendant’s behalf. He thus awarded plaintiff $2000 in damages for being arrested and held in jail. The real issue is whether the facts of this case support any legal theory of liability on the part of defendant.
Plaintiff, accompanied by his friend, James Johnson, went to defendant’s used car lot in July, 1976, where he met John Stevens and agreed to purchase a 1969 Ford for $1100. He gave Stevens $500 in cash and was told that Stevens would “write me up.” Instead, Stevens pretended to make a phone call, gave plaintiff a business card on which he wrote $500.00 and told him to take the car. Plaintiff got no receipt or title papers. He returned to the lot several times during the following month to get papers but was told each time to come back.
Defendant’s president, Alfred Estopinal, testified that John Stevens had worked for him as a used car salesman in 1975 but not in 1976. He produced copies of federal and state tax forms filed by the company in 1976 on which all employees were listed and Stevens’ name was not included. Estopinal testified further that the company was in the process of going out of business in 1976 and the used car lot which was some distance from the main office was closed for the most part and secured by chains and locks. The manager, Paul Ward, was “in and out” because he was looking for another job. Only when there was the prospect of a sale of a used car would someone go there and show the cars. His testimony that Stevens did not work for the company in 1976 was corroborated by that of Reginald Badeaux, an attorney and part owner of defendant, who recalled that Stevens was fired around Thanksgiving of 1975.
Nonetheless, the trial judge made a specific finding that Stevens was employed by defendant in July, 1976, on the basis of: 1) a transcript of testimony in a criminal prosecution against John Stevens in August, 1977, (about three years before the present trial) in which Estopinal testified that Stevens had been defendant’s used car manager in November, 1976; and 2) defendant’s answer to interrogatories signed by Ba-deaux as defendant’s attorney in which he stated that Stevens was employed between October 10 and November 19, 1976. The trial judge concluded “that it is unquestionably the weight of the evidence that Mr. Stevens was employed at the used car lot.”
In our judgment this finding was clearly wrong. Plaintiff and his friend may have thought Stevens was an employee but they could not know this. On the other hand both Estopinal and Badeaux were certain he did not work there after 1975 and explained the erroneous statements they made previously. In any event, neither of these statements lends any support to the conclusion that Stevens was employed in July, 1976, the pertinent time.
The trial judge reasoned that Stevens was an employee and sold the automobile for defendant to plaintiff. Thus, the automobile was owned by plaintiff when defendant reported it to the police as missing and ultimately caused plaintiff to be put in jail. In awarding damages to plaintiff the judge stated that the basis for the award was plaintiff’s twelve hour confinement but he explained:
“. .. . and I also, parenthetically, take into consideration that he did not seek for the return of his $500 of his deposit. I would have conceivably awarded him that deposit back or the value of the car that he lost, which was not before me. And that’s a matter that plaintiff knows best why he didn’t present that issue to me.”
Finally, the trial judge made a specific finding that there was no collusion between plaintiff and Stevens. In doing so he discussed and disposed of a police report made in connection with plaintiff’s arrest and put *353 into evidence by plaintiff through the testimony of the custodian of the record. In it the arresting officer states that he took the following statement from plaintiff:
“The subject stated he gave $500 to a subject named Steve who worked at Orleans Motors, and Steve told him he would make the sale on the side and would not have to finance the vehicle.”
The trial judge remarked that he did not consider this as a truthful statement because the policeman who took it did not testify at the trial.
Since plaintiff offered the statement in evidence he vouched for the officer’s credibility so that the trial judge erred in his rejection of it. Nonetheless, this single factor is not sufficient to justify our reversal of the finding that there was no scheme between plaintiff and Stevens. The trial judge specifically found that plaintiff was naive and unsophisticated and was the victim of his own shortcomings. The record as a whole does not demonstrate this to be manifestly erroneous.
Since we have concluded that Stevens was not an employee or agent of defendant when the supposed sale took place it follows that plaintiff — and defendant — were both victims of Stevens’ fraud. He was nothing more than a stranger and trespasser on defendant’s property who pretended to sell defendant’s car to plaintiff. As plaintiff himself testified.
“In other words he (Stevens) took the money in his pocket and he stole the money. He must have done about nine people that day.”
We do not decide whether concepts of apparent agency might have allowed plaintiff to specific performance of the purported sale, because plaintiff has not timely appealed nor answered the appeal and this judgment, therefore, cannot be altered in his favor. Evidently plaintiff is satisfied to seek recovery in tort rather than contract.
The record does support the conclusion that defendant breached a duty to plaintiff as a member of the general public because of the manner in which it was operating its used car lot. According to plaintiff there were a number of people looking at cars on the lot the day he “purchased” a car. From the description given by plaintiff and his companion Stevens had the free run of the place even to the extent of drinking coffee in the office. Each time plaintiff went back' to get his papers there was Stevens. By Estopinal’s own admission he had practically abandoned the lot. We can only speculate how Stevens gained access to the lot, office and cars but he had been a salesman just seven months previously and could have retained the keys. In any event, we conclude that defendant was negligent in allowing this situation to take place and plaintiff is entitled to recover damages resulting from that negligence. Beyond question, he is entitled to the $500 he paid to Stevens, but the question is whether he is entitled to any damages for being jailed.
It was not defendant’s act or omission in connection with its loose management of the used car lot which led to defendant’s arrest. He was not arrested because he had no title papers on the car. According to the police report, after plaintiff was unable to produce papers the officer “checked the license number through N.C.I.C. where the vehicle showed stolen on 12/1/76 from the 4000 block of Canal Street [the address of defendant’s main office]” Thus, it was defendant’s report to the police in December that its car was missing which caused plaintiff’s arrest. There is no evidence to suggest that plaintiff would have been arrested had it not been for the report.
Estopinal testified that when the inventory disclosed two missing automobiles, including the one involved here, he reported them as stolen and was later reimbursed by the insurance company for the loss of the other car. He also said that he never missed any cars until this final inventory was taken. He was surely justified in making the report for insurance and tax reasons. Such an act was reasonable and was not a breach of duty under the circumstances. Arellano v. Henley, 357 So.2d 846 (La.App. 4th Cir. 1978), Sapp v. J. A. West Co., *354 352 So.2d 268 (La.App. 2nd Cir. 1977) writ refused 353 So.2d 1337. We distinguish this case from Firstley v. Bill Watson Ford, Inc., 268 So.2d 314 (La.App. 4th Cir. 1972) where a report was made of a missing car, the car was recovered by the dealer but no report of this was made to the police, the car was subsequently loaned to plaintiff as a demonstrator, and he was apprehended for possessing a stolen car on the basis of the original, unrecalled report; and from Jones v. Simonson, 292 So.2d 251 (La.App. 4th Cir. 1974) where the report itself was unreasonable that plaintiff stole a rug considering the information available to defendant when he made the report. We conclude that defendant’s actions in making the report were reasonable and constituted no breach of duty to plaintiff and, since this led to plaintiff’s arrest, he is not entitled to damages for being jailed. We have considered whether defendant’s initial negligence was the cause of its making the report but concluded that the cause of the report was actually Stevens’ fraud which victimized defendant as well as plaintiff.
Accordingly, the judgment appealed from is affirmed but amended to reduce the $2000 damages to $500 with legal interest from date of judicial demand until paid and all costs of these proceedings.
AMENDED AND AFFIRMED.