Ifeanyi O. **EZENWA and Ann Ezenwa, Plaintiffs,**

v.

Edward J. **GALLEN, and Several Unnamed Agents, and Barringer, Inc., Defendants.**

No. 4:CV–95–0726.

United States District Court, M.D. Pennsylvania.

Oct. 17, 1995.

Craig T. Trebilcock, Stock and Leader, York, PA, for plaintiffs.

Matthew Chabal, III, Duane, Morris & Hecksher, Harrisburg, PA, Lawrence M. Rolnick, Stephen R. Buckingham, Lowenstein, Sandler, Kohl, Fisher & Boylan, P.A., Roseland, New Jersey, for defendant Barringer.

Robert R. Long, Jr., Assistant United States Attorney, Harrisburg, PA, for federal defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On May 10, 1995, plaintiffs Ifeanyi O. Ezenwa and Ann Ezenwa initiated this action with the filing of a complaint pursuant to 42 U.S.C. § 1983. An amended complaint was filed on June 6, 1995. Plaintiffs allege the violation of Ifeanyi Ezenwa's civil rights by named and unnamed agents of the United States Customs Service, in conjunction with defendant Barringer Technologies, Inc. (named as Barringer, Inc.; designated in this memorandum as "Barringer"). The United States has been substituted as defendant for the Customs Service agents with respect to the common law tort claims asserted by plaintiffs.

Barringer is the manufacturer of a device, called an "Ionscan," sold to the government for use in detecting the presence of illegal drugs and certain other substances. Plaintiffs allege that the product was defectively designed or manufactured, so that Barringer would be liable under the Pennsylvania law of strict products liability.

Before the court are motions to dismiss filed by Barringer and by the United States pursuant to Fed.R.Civ.P. 12(b)(6).

### DISCUSSION:

#### I. STANDARD OF REVIEW

A motion to dismiss under Fed. R.Civ.P. 12(b)(6) admits the well pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976). "It is the settled rule that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Leone v. Aetna Casualty & Surety Co.*, 599 F.2d 566, 567 (3rd Cir.1979) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The complaint must be read in a light most favorable to the plaintiff with every doubt resolved in plaintiff's favor. *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 398, 422 (E.D.Pa.1981).

#### II. FACTS ALLEGED IN THE AMENDED COMPLAINT

On November 30, 1993, a shipment of bath oil, soaps, and cosmetics from Spain, addressed to Ifeanyi Ezenwa, was received at the Harrisburg International Airport. The Ionscan was used by agents of the Customs Service to test for the presence of illegal drugs, and it issued a false reading that one of the bath oil products contained heroin.

On December 2, 1993, Ezenwa was arrested after returning from the airport to his place of business with the products in his possession. The arrest was made by agents of the Customs Service as well as drug enforcement agents from several state agencies, and occurred on the street in front of Ezenwa's business premises. The arrest was the result of the false reading from the Ionscan. Ezenwa remained in jail from December 2, 1993, through December 6, 1993, before the erroneous reading was detected.

The warrant for Ezenwa's arrest was issued pursuant to a request by a customs agent named Edward Gallen. Gallen applied based on the reading from the Ionscan and the erroneous belief that Ezenwa was an individual previously suspected of drug smuggling. Gallen also requested and obtained a warrant for the search of Ezenwa's home.

## III. BARRINGER'S MOTION

■ Barringer moves to dismiss because plaintiff has failed to allege the "physical harm" necessary to support a claim of strict products liability. It is important to distinguish such a claim from those asserted against the federal defendants. The law of torts generally requires a plaintiff to plead and prove a compensable "injury." *Friedman v. F.E. Myers Co.*, 706 F.Supp. 376, 379 (E.D.Pa.1989) (citing *Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936, 942 (3d Cir.), *cert. denied sub nom. Reading Co. v. Schweitzer*, 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); W. Prosser and P. Keeton, Prosser and Keeton on Torts (5th ed. 1984) at 165). The question of whether an injury is compensable depends on the particular tort. *Compare Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 483 A.2d 456, 461 (1984) (in a defamation action, injury to reputation is compensable), *with Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880, 880–881, 886 (1993) (in products liability action, "subclinical" or "asymptomatic" physical condition or disease is not compensable, while "manifest" condition or disease caused by the same product is compensable), *allocatur granted*, 539 Pa. 651, 651 A.2d 539 (1994) (table).

It also is important to distinguish the tort implicated in the claim against Barringer, strict products liability, and the constitutional torts alleged to have been committed by the federal defendants. The Fourth Amendment is violated when an individual's person or property is searched or seized by a law enforcement officer unreasonably and/or without probable cause. *See generally Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (no violation of the Fourth Amendment because there was no seizure). In such a case, the search or seizure is itself actionable.

In this case, plaintiffs acknowledge that the operation of the Ionscan did not cause Ezenwa an immediate, direct injury in the form of a burn or a cut. Plaintiffs' Brief in Opposition to Barringer's Motion to Dismiss at 3. Instead, plaintiffs contend that such a concept of injury is too restrictive, and that his arrest, search, and confinement constitute physical injury for purposes of the strict products liability claim.

The Supreme Court of Pennsylvania has expressly adopted the Restatement (2d) of Torts § 402A as the law of strict products liability in the Commonwealth. *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853, 854 (1966). That section reads:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability *for physical harm* thereby caused *to the ultimate user or consumer, or to his property,* if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (2d) of Torts § 402A (emphasis added).

The terms "injury" and "harm" are defined elsewhere in the Restatement as follows:

(1) The word "injury" is used throughout the Restatement of this Subject to denote the invasion of any legally protected interest of another.

(2) The word "harm" is used throughout the Restatement of this Subject to denote the existence of loss or detriment in fact of any kind to a person resulting from any cause.

(3) The words "physical harm" are used throughout the Restatement of this Subject to denote the physical impairment of the human body, or of land or chattels.

Restatement (2d) of Torts § 7.

The manner in which "injury" is applied in the Restatement is more a theoretical construct: it involves the invasion of an interest, the interest being one defined by law. "Harm" is an actual, not theoretical, loss or

detriment. Using an arrest in violation of the Fourth Amendment as an example, the right to be free from an unreasonable seizure would be the legally protected interest, the arrest would be the deprivation of that right, i.e. the injury, and the time spent in custody would be the harm. For purposes of the Restatement, the two terms are not synonymous. *See also* Restatement (2d) of Torts § 7, Comment a (contrasting "injury" and "harm").

■ As indicated in the emphasized portion of § 402A, a plaintiff must show a "physical harm" (defined in § 7) to recover under a theory of strict products liability. The term is further explained as follows:

> The words "physical harm" are used to denote physical impairment of the human body, or of tangible property, which is to say land or chattels. Where the harm is impairment of the body, it is called "bodily harm," as to which see § 15.

Restatement (2d) of Torts § 7 Comment e. The term "bodily harm" is in turn described further:

> Bodily harm is any physical impairment of the condition of another's body, or physical pain or illness.
>
> Comment:
>
> *a.* There is an impairment of the physical condition of another's body if the structure or function of any part of the other's body is altered to any extent even though the alteration causes no other harm....

Restatement (2d) of Torts § 15 and Comment a. The Restatement definitions, of course, control over the ordinary definition or usage of the terms. *See, e.g., In re One Meridian Plaza Fire Litigation,* 820 F.Supp. 1460, 1476–1477 (E.D.Pa.) (applying definitions set forth in § 7), *rev'd on other grounds sub nom. Federal Insurance Co. v. Richard I. Rubin & Co. Inc.,* 12 F.3d 1270 (3d Cir. 1993), *cert. denied sub nom. Ejay Travel, Inc. v. Algemeen Burgerlijk Pensioenfonds,* — U.S. ——, 114 S.Ct. 2101, 128 L.Ed.2d 663 (1994).

■ We think it evident that there has been no "physical harm" in the form of "bodily harm" as the terms are used in the Restatement. Ezenwa points out that he was arrested and handcuffed, strip searched, and held in custody for approximately four days. Certainly, these are not events any reasonable person would want to experience. However, they do not entail an alteration of the structure or function of any part of the body, and so do not fall within the type of harm which is compensable under § 402A.

Ezenwa also points to the search of his property by customs agents. Again, this is not the type of harm which is compensable under § 402A. " 'Harm' implies a loss or detriment to a person, and not a mere change or alteration in some physical person, object or thing." Restatement (2d) of Torts § 7, Comment b. The fact of a search does not constitute a loss or detriment, and so is not "harm" as the term is used in the Restatement. Even if the search resulted in some broken property or disorder, this is not the type of harm contemplated by § 402A, since the harm must be causally related to the defect in the product. In such an instance, the damaged or disorderly property would be the result of the manner in which the search was conducted, and not the fact of the search. The damage or disorder would be too attenuated from the working of the product to be causally related.

Plaintiffs in their brief go to great lengths in describing the injury suffered by Ezenwa. At the beginning of this section, we contrasted the type of harm contemplated by § 402A to other causes of action. The purpose of doing so was to limit the issue that is before the court: whether Ezenwa may recover under a theory of strict products liability. We conclude that he cannot. Although plaintiffs contend that this is an artificial restriction, *see* Plaintiffs' Brief in Opposition to Barringer's Motion to Dismiss at 3, this argument is rebutted by the language of the Restatement itself:

> ... Frequently, where "harm" is used in this Restatement, it is qualified by some limiting adjective, such as bodily harm, physical harm, pecuniary harm, and the like. In each such case the intent is to limit the rule stated to the particular kind of harm specified....

Restatement (2d) of Torts § 7, Comment b.

Plaintiffs also make repeated reference to other causes of action as they may relate to

the injury to Ezenwa. For example, they cite one case for the proposition that a person may be held liable for negligently causing the arrest of another. *Firstley v. Bill Watson Ford, Inc.*, 268 So.2d 314 (La.App. 1972); Plaintiffs' Brief in Opposition to Barringer's Motion to Dismiss at 9 n. 9. These cases will not be discussed at length for one reason: the causes of action discussed are not those for which plaintiffs seek recovery. We have discussed above the concept of differing causes of action being directed toward specific types of injuries and/or harm. No cause of action is before this court except strict products liability under § 402A. Concepts from other causes of action are not interchangeable in most instances, and, as demonstrated by the specific definitions applied to terms used in § 402A, are not interchangeable in this instance.

A further example of this again is provided by plaintiffs themselves. They argue:

> Under such an argument, an indecent or sexual ass[au]lt would not be characterized as a "physical harm," because, once the assault was completed, there might not be visible wounds. The physical outrage of being assaulted in such a manner, as well as the outrage of being wrongly seized, bound and confined, are clearly physical harm.

Plaintiffs' Brief in Opposition to Barringer's Motion to Dismiss at 5 n. 3. And elsewhere:

> Similarly, under Defendant's theory, a battery, which is recognized as an offensive or harmful touching of a person's being, would be characterized as solely an economic or emotional harm, unless the offensive touching was also "harmful" in the sense of inflicting a wound. The law of the Commonwealth of Pennsylvania has long recognized that a battery is not simply an emotional harm, but a cause of action based upon an unwanted touching of a person's physical being. Restatement (Second) of Torts §§ 18, 19 (1965).

Plaintiff's Brief in Opposition to Barringer's Motion to Dismiss at 6 n. 4. We generally agree with this characterization of a cause of action for battery (although use of the term "physical outrage" is superfluous and not particularly meaningful). The problem with plaintiffs' argument is that proof of a battery does not entail proof of physical harm: "Since the essence of the plaintiff's grievance consists in the offense to the dignity involved in the unpermitted and intentional invasion of the inviolability of his person and not in any physical harm done to his body, it is not necessary that the plaintiff's actual body be disturbed." Restatement (2d) of Torts § 18, Comment c.

In other words, even if a battery causes only psychological harm, and not "physical harm" as the term is used in the Restatement, there is no effect on the compensability of the tort, even in the extreme case of a sexual assault. We assume for these purposes, as do plaintiffs, that there is no "physical harm" under the Restatement, although there well may be, since physical pain would fall within the definition of "bodily harm." *See* Restatement (2d) of Torts § 15. The point is that physical harm is not an element of a cause of action for battery, and the analogy used by plaintiffs is inapt.

Since no other cause of action is asserted against Barringer, our holding is limited. We do not hold that no cause of action exists against the manufacturer of a product which does not operate properly and causes an arrest. We hold only that an arrest and physical confinement is not the type of physical harm contemplated by § 402A, so that a cause of action for strict products liability does not exist under the circumstances presented by this case.

Because we find that Ifeanyi Ezenwa did not suffer the "harm" necessary to establish a claim under § 402A, we do not reach the parties' arguments concerning the public policy of the Commonwealth of Pennsylvania. Barringer's motion to dismiss Count III of the amended complaint will be granted.

## IV. FEDERAL DEFENDANTS' MOTION

### A. Status of Claims

In their amended complaint, plaintiffs have set forth six counts against federal defendants. Count I alleges false arrest and imprisonment, as common law claims and in violation of the Fourth Amendment. Count II alleges malicious prosecution, again as a

common law claim and in violation of the Fourth Amendment. Count IV sets forth a claim for the intentional infliction of emotional distress, this Count referring to the claim by plaintiff Ann Ezenwa. Count V alleges libel and "Failure to Expunge Records." The named defendant for Count V is George Weise, the Commissioner of the Customs Service. Count VI is a claim for punitive damages. Finally, Count VII is a claim in equity seeking to have the court direct the expungement of Ifeanyi Ezenwa's name from government criminal and Customs Service records.

As noted above, the United States has substituted itself as defendant for defendant Gallen with respect to the common law tort claims against him in Counts I, II, and IV of the amended complaint.

## B. Federal Tort Claims Act

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 et seq., sets forth the procedure to be followed when asserting a claim against the government or a federal employee based on a common law tort. Specifically, 28 U.S.C. § 2679(d) provides that, on certification by the Attorney General that the employee was acting within the scope of his or her employment at the time of the allegedly tortious conduct, the United States is substituted as the party defendant and the action is deemed to be one against the United States. The remedy then available under the FTCA is exclusive of all other claims for money damages arising out of the same transaction or occurrence. 28 U.S.C. § 2679(b)(1). Subject to certain defenses, the United States is liable in the same manner and to the same extent as a private party in like circumstances. 28 U.S.C. § 2674.

However, prior to bringing a civil action based on the FTCA, the claimant must present his or her claim to the appropriate federal agency for review; i.e., exhaustion of administrative remedies is a prerequisite to an action under the FTCA. 28 U.S.C. § 2675(a). The authority on the part of the agency to handle the administrative claim and to construct a procedure for doing so is set forth in 28 U.S.C. § 2672.

## C. Statute of Limitations

The United States first argues that the common law claims against it, as the substitute for defendant Gallen, are barred by the statute of limitations. The appropriate provision reads:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

■ Plaintiffs argue that the federal defendants waived this objection by substituting the United States as defendant. Actually, the United States is the proper party defendant, and (based on the exclusivity provision of § 2679) the only proper party defendant, so that the substitution cannot be said to have constituted any action other than the substitution itself.

■ The government couches its statute of limitations argument in terms of subject matter jurisdiction. In *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 94–96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990), the Supreme Court held that, when Congress waives sovereign immunity and prescribes a statutory limitations period, absent language to the contrary, the limitations period is subject to equitable tolling. Implicit in a holding that equitable tolling applies is a rule that the prescribed limitations period is *not* jurisdictional in nature. *Glarner v. United States, Dept. of Veterans Administration,* 30 F.3d 697, 701 (6th Cir.1994); *Schmidt v. United States,* 933 F.2d 639, 640 (8th Cir.1991) (both cases dealing specifically with § 2401).

■ Plaintiffs forwarded their administrative claim to the Customs Service, which mailed the denial of the administrative claim by certified mail sent January 18, 1995. Under § 2401(b), plaintiffs had until July 18, 1995, to initiate a civil action against the United States. Plaintiffs initiated their action against defendant Gallen by filing the

complaint on May 10, 1995. The notice of substitution of the United States as party defendant was filed August 10, 1995. The question is which date, or what other date, constitutes the date of initiation of the action against the United States. The crux of the federal defendants' argument seems to be that the United States was not named as a defendant by plaintiffs within the 6–month limitations period, thus barring the action. We disagree.

In *McGuckin v. United States*, 918 F.2d 811 (9th Cir.1990), the plaintiff filed a complaint naming the Bureau of Prisons as well as BOP employees as defendants. The original complaint was served on the United States Attorney within the limitations period. An amended complaint later was filed, and was served on the U.S. Attorney, also within the limitations period. The plaintiff finally filed a second amended complaint, which he served on two U.S. Attorneys and the Attorney General well after the limitations period had expired. 918 F.2d at 812.

The Ninth Circuit held that the service of the second amended complaint related back to the date of the earlier complaints due to the operation of Fed.R.Civ.P. 15(c). The notice requirements of Rule 15(c) when the United States is a party are met by delivering or mailing of process to the U.S. Attorney, his or her designee, or the Attorney General. Since the plaintiff had provided notice to the United States within the limitations period, and the United States knew or should have known that it was the proper party, the date of the filing of the second amended complaint related back, and the action was not barred by the limitations period. 918 F.2d at 812–813.

Other cases are consistent with *McGuckin.* For example, one Circuit Court has held:
> [W]here an amendment naming the United States as the proper party seeks to relate back under Rule 15(c), the United States is deemed to have been properly notified where, within the statutory limitation period, there has been either 1) delivery of process to and receipt by the United States Attorney (or proper designee); or 2) mailing of process to the Attorney General.

*Allgeier v. United States,* 909 F.2d 869, 873 (6th Cir.1990) (also collecting cases).

The only difference between this case and *McGuckin* is that the United States made itself a defendant in this action, while in *McGuckin* the United States was named by the plaintiff in his amended complaint. In both cases, the wrong entity was named in the complaint, but the appropriate persons were served with the complaint. *See* Record Document No. 7 (return of service of process on Attorney General); Record Document No. 8 (return of service of process on U.S. Attorney for this district); Federal Defendants' Motion for Extension of Time to Answer or Otherwise Plead (record document no. 10, filed July 10, 1995).

We conclude that the relation-back rule of Rule 15(c) applies by analogy and by operation of the notice of substitution. The notice of substitution makes an amendment by plaintiff superfluous: under § 2679(d)(1), once the Attorney General certifies that the employee was acting within the scope of employment, the action is deemed to be one against the United States. An amendment naming the United States would only restate the legal effect of the notice of substitution, which in essence acts as an amendment by the federal defendants.

Since the proper parties were provided notice of the claims, and knew or should have known, through the operation of the FTCA, that the United States was the proper party defendant, the effective date for satisfying the limitations requirement was the date of service of the complaint on the U.S. Attorney and the Attorney General. The common law tort claims will not be dismissed as time-barred.

### D. Injunctive Relief

The federal defendants move to dismiss plaintiffs' claims for injunctive relief based on plaintiffs' failure to exhaust their administrative remedies under the Privacy Act of 1974, 5 U.S.C. § 552a. Plaintiffs argue that their claim for equitable relief is not asserted under the Privacy Act. In their reply brief, the federal defendants argue that the equitable relief sought is in the form of mandamus, and

mandamus is not appropriate because relief is available under the Privacy Act.

■ The Privacy Act permits a civil action to enforce its provisions only after exhaustion of administrative remedies. 5 U.S.C. § 552a(g). Although equitable relief in the form of an injunction to expunge records may be granted in an action under the Privacy Act, such relief is not limited to that Act. The relief requested also may be sought in a direct action under the Constitution. *Smith v. Nixon*, 807 F.2d 197, 204 (D.C.Cir.1986) (citing, *inter alia*, *Paton v. La Prade*, 524 F.2d 862, 868–869 (3d Cir.1975) (also setting forth factors to be considered)). Plaintiffs claim that the maintenance of the records violates Ifeanyi Ezenwa's rights under the Fourth Amendment.

Count VII of the amended complaint, which seeks injunctive relief in the form of expungement of criminal records, will not be dismissed.

### E. Personal Service

The federal defendants originally contended that the claims against defendant Gallen should be dismissed for failure to effect proper service of the complaint under Fed. R.Civ.P. 4. In their reply brief, these defendants concede that proper service has been made by plaintiffs, rendering this contention moot.

### F. Qualified Immunity

The federal defendants contend that defendant Gallen is entitled to qualified immunity for the conduct alleged in the complaint. The Third Circuit recently summarized the doctrine of qualified immunity as follows:

> Even where a plaintiff can establish a constitutional violation, under the doctrine of qualified immunity government officials will not be liable if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand

> that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In contrast, if "the law is not established clearly when an official acts, he is entitled to qualified immunity because he 'could not reasonably be expected to anticipate subsequent legal developments.'" *In re City of Philadelphia [Litigation]*, 49 F.3d [945,] 961–62 [ (3d Cir. 1995) ] (quoting *Harlow*, 457 U.S. at 817–19, 102 S.Ct. at 2737–39)....

*Bieregu v. Reno*, 59 F.3d 1445, 1458 (3d Cir.1995).

The Supreme Court has summarized the law of qualified immunity in the case of an agent making an arrest without a warrant as follows:

> Our cases establish that qualified immunity shields agents Hunter and Jordan from suit for damages if "a reasonable officer could have believed [Bryant's arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." ... Even law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity.... Moreover, because "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability," ... we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation....

> . . . . .

> Under settled law, Secret Service agents Hunter and Jordan are entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest Bryant. Probable cause existed if "at the moment the arrest was made ... the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that Bryant had violated 18 USC § 871....

*Hunter v. Bryant*, 502 U.S. 224, 227–28, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589, 595–596 (1991) (emphasis, brackets in original; citations omitted).

In order to prevail on a claim that an arrest pursuant to a warrant violated the Fourth Amendment, when a neutral magistrate has determined (as in this case) that the affidavit supporting the warrant application demonstrates that there is probable cause for issuing the warrant, the plaintiff must show that the affiant "either stated a deliberate falsehood or acted with a reckless disregard for the truth. Proof of negligence or innocent mistake is insufficient." *Lippay v. Christos*, 996 F.2d 1490, 1500–1501 (3d Cir.1993) (citing *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978)). An affiant acts with a reckless disregard for the truth by making statements with a high degree of awareness of their probable falsity. *Lippay*, 996 F.2d at 1501 (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 215–16, 13 L.Ed.2d 125 (1964)).

In this case, defendant Gallen supplied the affidavit in support of the arrest warrant for Ifeanyi Ezenwa. The affidavit first recites Gallen's background as a Customs agent, with prior experience as a Special Agent for the Bureau of Alcohol, Tobacco and Firearms and as a Pennsylvania State Trooper. Gallen was informed by another agent that suspicious packages were received by the Global Atlantic Corporation of York, Pennsylvania. The packages were shipped by air and contained personal hygiene items such as soap, bath oil, shampoo, etc. Mixing narcotics with these items is a popular method used by the West African smugglers. Moreover, the mailing of such packages is suspicious because of the easy availability of like items in the American market.

Further investigation showed that Global Atlantic was owned by Ifeanyi Oliver Ezenwa of York, Pennsylvania. A person with the same name and birth-date as Ifeanyi Ezenwa is reflected in the Treasury Enforcement Computer System as having been suspected of smuggling heroin into the United States at New York, New York, in April of 1992. On October 5, 1993, Gallen observed a person who identified himself as Oliver Ezenwa picking up parcels addressed to Global Atlantic. The Ford van operated by this individual was registered to Ezenwa O. Ifeanyi, whose address was the same as that of Ifeanyi Oliver Ezenwa, the owner of Global Atlantic.

On November 30, 1993, Gallen was informed by an inspector that three packages had arrived from Spain for Global Atlantic. One of the boxes was damaged—two bottles of toilette water had broken. On December 1, 1993, a sergeant of the Delaware National Guard took samples from the boxes. The samples were tested with the Ionscan, which showed a reportable amount of heroin on a sample taken from a bottle of powder.

Plaintiffs point to two alleged misrepresentations in the affidavits of defendant Gallen. First, they point to the Ionscan reading and allege that Gallen did not inform the magistrate judge that the device is not reliable. Second, they point to the fact that no record exists of any suspicion of a person named Ifeanyi Ezenwa with respect to smuggling in April of 1992. As to the latter, the contention may be easily disposed-of: the year simply is misidentified as 1992 instead of 1991, as plaintiffs were informed. *See* Exhibit C to Plaintiffs' Response to Federal Defendants' Motion to Dismiss at 1.

The main question, then, is whether Gallen knew that the Ionscan was unreliable and failed to inform the magistrate judge of such. The federal defendants argue that: (1) plaintiffs did not plead with specificity and have provided *no* evidence that the Ionscan is unreliable; (2) the Ionscan in fact is reliable; and (3) even without the Ionscan result, the affidavit establishes probable cause for the arrest. Each of these arguments will be addressed in turn.

### (i) Sufficiency of Facts Pleaded

Initially, it should be pointed out that defendant Gallen did not operate the Ionscan. The affidavit of probable cause states that Gallen received the report of the Ionscan reading from a member of the Delaware National Guard. Therefore, Gallen cannot be held liable based on any allegation of his *own* misuse of the device or use of the Ionscan with knowledge of its unreliability.

In their amended complaint, plaintiffs allege:

The [I]onscan device is not a scientifically reliable technology for detecting heroin in the products in question.

It is recognized by law enforcement personnel skilled in the operation of the [I]onscan, the scientific community, as well as by Barringer, that the [I]onscan may provide a false positive reading for the presence of heroin in products of a high alkaline composition.

The products in question were of high alkaline composition, a fact known to agents of the United States at the time of testing.

Amended Complaint at 3 ¶¶ 34–36. Plaintiffs add to these allegations a contention that, due to the unreliability of the Ionscan, the agents were unreasonable in not corroborating the positive reading the Ionscan provided. Amended Complaint at 3–4 ¶¶ 37–39. Finally, plaintiffs alleged that the agents withheld their knowledge of the Ionscan's unreliability from the magistrate judge. Amended Complaint at 4 ¶ 40.

In sum, plaintiffs have alleged that the agents, including defendant Gallen since "agents" is used collectively, knew that the Ionscan was unreliable, used its results anyway, and did not inform the magistrate judge of the unreliability of the device. Accepting as true the facts pleaded by plaintiffs, the allegations set forth in the amended complaint are sufficient to survive a motion to dismiss.

### (ii) Reliability of the Ionscan

The federal defendants' second argument is that the Ionscan is in fact a reliable device. They buttress this argument by pointing out that the results of an Ionscan test were admitted into evidence by another court. Federal Defendants' Brief in Support of Motion to Dismiss at 20–21 and 21 n. 3; Federal Defendants' Reply Brief at 7 n. 6; *United States v. Lee,* No. 92–6070–Cr–ZLOCH (S.D.Fla. issued March 30, 1995) (Defendants' Exhibit 3, appended to Reply Brief). Although perhaps suggestive, we do not believe that the decision to allow Ionscan results into evidence in another case is dispositive of the issue.

Moreover, there is no indication of the substance tested in the *Lee* case, i.e. whether it was high in alkaline content, the type of material for which plaintiffs claim the device is unreliable. The Eleventh Circuit's opinion in the case also does not indicate the type of material tested, and further indicates that the device detected cocaine, not heroin. *United States v. Lee,* 25 F.3d 997, 998 (11th Cir.1994) (issued prior to the above-cited order of the district court, which was considering the case after remand). The allegations in the amended complaint actually are rather specific: the Ionscan is unreliable when it provides a positive reading for heroin detected in a test of high-alkaline material. *Lee* does not appear to apply to these facts.

Finally, the 11th Circuit's opinion indicates that both an Ionscan and a Sentor, a device which utilizes technology called gas chromatographic chemiluminescence, were at issue, while the question here is whether it was reasonable to rely on the uncorroborated results produced by an Ionscan.

The federal defendants' argument that the Ionscan is a reliable device is not a basis for dismissing the Fourth Amendment claims.

### (iii) Probable Cause

The federal defendants' last argument is that, even without the disputed facts, the affidavits of defendant Gallen still establish probable cause for issuance of the arrest warrant and the search warrants. We disagree. Even taking into consideration the fact of a record that a person named Ifeanyi Ezenwa was suspected of narcotics trafficking, Gallen's applications for warrants would have been based on that fact plus:

(1) shipping narcotics in toiletry items is popular among West African smugglers;

(2) Ifeanyi Ezenwa received, through his corporation, a package of soaps, etc., from Spain; and

(3) similar items are available in this country.

A reasonable officer could not have believed that probable cause existed under these circumstances. It simply is not reasonable to believe that any person who has ever been suspected of narcotics smuggling, West Afri-

can or otherwise, may be arrested because he or she receives a delivery of soap from another country.

We conclude, then, that the arguments raised by the federal defendants do not support dismissal based on qualified immunity. We note, however, that at least one Court of Appeals has noted that qualified immunity is "normally raised prior to trial at the summary judgment stage." *Mouille v. City of Live Oak,* 977 F.2d 924, 926 (5th Cir.1992), *cert. denied sub nom. Liberda v. City of Live Oak,* — U.S. —, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). This appears to be the most reasonable stage because all of the circumstances guiding the agent's or officer's conduct would not be set out in the complaint, as in this case. However, keeping in mind the admonition of the Supreme Court that the issue of qualified immunity should be decided at the earliest possible stage, we will allow plaintiffs to engage in discovery for purposes of rebutting the defense of qualified immunity. The denial of the motion to dismiss is without prejudice to the right of the federal defendants to argue qualified immunity in a motion for summary judgment.

In this context, we consider the federal defendants' argument that plaintiffs could have made requests under the Freedom of Information Act (FOIA) in order to gather information concerning the Ionscan. We are aware of no requirement that an aggrieved party must exhaust its FOIA opportunities prior to bringing suit and engaging in discovery.

We note, however, that the federal defendants properly point out that the United States is not liable for punitive damages under the FTCA. *See* 28 U.S.C. § 2674. Count VI of the amended complaint, which seeks punitive damages from Commissioner Weise due to the failure to expunge the records of Ifeanyi Ezenwa, will be dismissed.

## V. CONCLUSION

The motion to dismiss filed by Barringer will be granted. The motion to dismiss filed by the federal defendants will be denied, with the exception of Count VI of the amended complaint. An appropriate order shall issue.

The order also shall set forth the proper party defendant for each of plaintiffs' claims.

### ORDER #1

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The motion (record document no. 14) by defendant Barringer Technologies, Inc., to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted, and Count III of the amended complaint is dismissed. Barringer Technologies, Inc., is dismissed as a party to the case.

2. The motion (record document no. 16) to dismiss filed by defendants the United States, Edward J. Gallen, and George Weise, is granted in part and denied in part as follows:

(a) Count VI of the amended complaint, which sets forth a claim for punitive damages related to Count V, is dismissed.

(b) The motion to dismiss otherwise is denied.

3. The United States is the defendant for the following common law tort claims asserted by plaintiffs:

(a) false arrest and false imprisonment (Count I);

(b) malicious prosecution (Count II);

(c) intentional infliction of emotional distress (Count IV); and

(d) libel (Count V).

4. Edward J. Gallen is the defendant for plaintiffs' claims for unreasonable search and seizure under the Fourth Amendment (Counts I, II).

5. George Weise is the defendant for plaintiffs' claim for injunctive relief under the court's equitable powers (Count VII).